(No. 13258.—Judgment reversed.)

THE WABASH RAILWAY COMPANY, Defendant in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(JULIA MILLER,
Admx. Plaintiff in Error.)

*Opinion filed June 16, 1920—Rehearing denied October 7, 1920.*

· 1. WORKMEN'S COMPENSATION—*when employment begins and
when it ends.* An employment is not limited to the exact moment
when the employee begins work or to the moment when he ceases
that work but necessarily includes a reasonable amount of time
before and after actual work.

2. SAME—*whether employee in going to or from work is in line
of employment depends upon circumstances.* Whether an employee
in going to or from the place of his employment is in the line of
his employment depends largely on the particular circumstances of
the case, and the question where the liability of the employer be-
gins and ends is usually one of fact.

3. SAME—*injury to employee while on premises of employer and
following customary route from work occurs in course of employ-
ment.* An injury to an employee on the premises of his employer
while leaving his work within a reasonable time by a customary or
permitted route occurs in the course of the employment, although
it is not the route provided by the employer.

· 4. SAME—*when injury to railroad employee going from work
occurs in course of employment.* An injury to a roundhouse em-
ployee struck by a switch engine while leaving his work by a cus-
tomary route used by employees who desired to ride home on one
of the employer's trains occurs in the course of the employment,
although he might have avoided walking along the track by tak-
ing a street car to his home.

WRIT OF ERROR to the Circuit Court of Madison county;
the Hon. LOUIS BERNREUTER, Judge, presiding.

W. E. HADLEY, for plaintiff in error.

EDWARD C. KRAMER, RUDOLPH J. KRAMER, and BRUCE
A. CAMPBELL, (N. S. BROWN, of counsel,) for defendant
in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error filed an application for compensation under the Workmen's Compensation act for the death of her husband in 1917 on the premises of defendant in error, the Wabash Railway Company. The Industrial Commission entered an award in favor of the administratrix, but on review in the circuit court on writ of *certiorari* the record was quashed and judgment was entered in favor of defendant in error. The cause has been brought to this court by writ of error.

Charles Miller lived with his wife and two children in Venice, Madison county, Illinois, and at the time of the fatal accident was working as a machinist in repairing engines in the company's roundhouse at Brooklyn, in the same county. Power-driven machinery was used in the roundhouse. He worked there from 7:00 A. M. to 4:00 P. M. each day, and on the day of his death finished work in the roundhouse at the usual time and started walking down between two switch tracks on the railway premises, apparently to take a train for home, when he was struck by a switch engine and injured so that he died soon after he was taken to the hospital.

The evidence tends to show that frequently employees whose places of residence were on the line of defendant in error's railway in the direction of Venice, in going to and leaving their work at the roundhouse took the company's trains, though they could, and sometimes did, take street cars in going from Brooklyn to Venice and other towns in the vicinity. In order to reach the train of the Wabash Railway Company the employees, after leaving the roundhouse, usually walked down what was known as the "rip track" (or, as sometimes called in the testimony, tracks 10 and 11,) to a point in front of the yard office and switchman's shanty, and it was while going along this track that the deceased was struck. George Eckard, another employee,

on the evening of the accident was walking down the rip track (10) to take a train and saw the deceased struck by the switch engine and injured. This witness testified there was no path here different from other parts of the yard on the premises of the railway company, but the tracks were covered with cinders and men walked either down one of the tracks, or, as we understand, on the cinders just outside of the tracks; that Miller had taken that particular train two or three times a week for the previous three months, and that witness had seen as many as twenty or more of the employees take the same train. There was other evidence in the record tending to support the testimony of Eckard that the employees frequently took this train and walked across the yard in the same way that the deceased walked. The foreman of the Wabash roundhouse testified that since Miller had been employed there in October, 1913, it was the custom of the employees to walk through the yard in the way he was walking and to ride on the train free, so far as witness knew. The evidence shows there was no contract with Miller relative to furnishing him transportation to or from his work. Some of the employees who had worked for the company over five years had passes. Miller had not worked for it that long. When he rode on the train he was not charged fare by the railway company nor were any of the men who worked for the company. The conductor would simply go through the car, recognize the passengers who were railroad men and pass them without tickets. There were no instructions from the railway authorities for the men to take that train and no orders of any kind in regard to the matter. The evidence also shows that when Miller did not take the train going to and from his work he took a street car, which ran every ten or fifteen minutes between Brooklyn and Venice.

The principal question here argued is whether Miller's accident arose out of and in the course of his employment. His work in the roundhouse was completed at four o'clock,

and the evidence tends to show that he could take a street car to his home and thus avoid walking down the tracks in the yard of defendant in error, but it also appears by the weight of the evidence in the record that there was a custom on the part of many of the employees to go down the tracks to take a train, and that this custom was known to the officials of the railway company who were in charge of the work at the roundhouse. This court has held that an injury occurring to an employee while on his way to or from his work may or may not arise out of and in the course of the employment, depending upon the special facts of the particular case. (*Fairbank Co. v. Industrial Com.* 285 Ill. 11.) The court said in that case (p. 13): "When work for the day has ended and the employee has left the premises of his employer to go to his home the liability of the employer ceases, unless after leaving the plant of the employer the employee is incidentally performing some act for the employer under his contract of employment." It is clear from this record that the accident occurred on the premises of the employer, as that word is ordinarily understood.

One of the controlling factors in determining the question here under consideration is whether the employee at the time of the accident was within the orbit, area, scope or sphere of his employment. The usual rule followed in workmen's compensation cases appears to be that a man's employment does not begin until he has reached the place where he is to work or the scene of his duty and does not continue after he has left the premises of his employer, (Bradbury on Workmen's Comp.—3d ed.—468,) and it is ordinarily held that if an employee is injured on the premises of the employer in going to or from work he is entitled to compensation for such injuries. (1 Honnold on Workmen's Comp. sec. 122; Bradbury on Workmen's Comp.—3d ed.— 473, and authorities cited.) The employment is not limited to the exact moment when the workman reaches the place

where he begins his work or to the moment when he ceases that work. It necessarily includes a reasonable amount of time and space before and after ceasing actual employment, having in mind all the circumstances connected with the accident. (Boyd on Workmen's Comp. sec. 486.) Whether an employee in going to or from the place of his employment is in the line of his employment will depend largely on the particular facts and circumstances of each case. There must necessarily be a line beyond which the liability of the employer cannot continue, and the question where that line is to be drawn has been held to be usually one of fact. (Elliott on Workmen's Comp. Acts,—7th ed.—41.) The area of an employee's duty is much more readily ascertained in some cases than in others. Where the premises are confined to a single building or plant or inclosure it is usually held that the accident occurring on the premises arises out of and in the course of the employment, but when the accident occurs on the right of way of a railroad and the right of way extends for miles with the main track line and for a considerable distance on the switch tracks or in the yards it is much more difficult to decide. In the recent case of *Schweiss* v. *Industrial Com.* 292 Ill. 90, this court had occasion to review numerous authorities bearing on this question, and the cases there cited will illustrate how different courts have viewed this question. We will not attempt here to refer to those cases in detail but simply cite the opinion, which shows the bearing that such cases have on the question here involved. Some additional authorities, however, may help to throw light on the question.

An accident happened to a workman employed in one of the departments of the employer's oil works when he was going to his work on a path on the employer's premises provided for the use of the workmen, although at the time of the accident the nearest building belonging to the works was 80 yards away and his own working place was 300 yards distant. It was found that the accident arose out of and

in the course of the employment. *Nicol* v. *Young's Paraffin Oil Co.* 52 S. L. 354.

An accident to a miner was held to arise out of and in the course of his employment where, while proceeding above the ground to his work, he fell and broke his leg on the rails belonging to the employer leading to the doorway of a horizontal passage by which the mine was entered, at a spot some 13 feet from the doorway. *Mackenzie* v. *Coltness Iron Co.* 6 Sess. Cas. (5th series Scot. Court of Session) 8.

Where a miner at the end of his day's work changed his clothes, and, still carrying a miner's lamp, started towards the bottom of the shaft with the intention of ascending to the top, and about 200 feet from the room where he had been at work and about half a mile from the bottom of the shaft one of his eyes was put out by coming in contact with a piece of slate hanging from the roof, it was held that the accident arose out of and in the course of his employment. *Sedlock* v. *Carr Coal Co.* 98 Kan. 680.

An employee who was injured while going down in an elevator in the building of his employer after the whistle blew to cease work was held to be injured in the course of his employment. *Nelson* v. *Ætna Life Ins. Co.* 12 N. & C. C. A. 660.

A stationary engineer, after the whistle had sounded for quitting work for the day, jumped over a pile of lumber to make a short cut out of the factory and fell, breaking his ankle. It was held that the injury arose out of the employment. *Bennett* v. *Russell & Sons Co.* 12 N. & C. C. A. 659, note.

A laborer at work in a field was stopped by a threatened storm, and while going to his home across his employer's land to avoid the storm he stepped on a plank and sustained an injury. It was held that the accident arose out of and in the course of his employment. *Taylor* v. *Jones,* 1 B. W. C. C. 3.

This court held in *Stephens Engineering Co.* v. *Industrial Com.* 290 Ill. 88, that an injury to an employee caused by a fall from a fire-escape which he attempted to descend for the purpose of reporting to the time-keeper at the close of his day's work arose out of and in the course of his employment, where it was customary for the workmen to use the fire-escape as a means of descent and such use was known to the employer, although there was another way of leaving the place of work which the evidence tended to show would be safer than the fire-escape.

The great weight of authority appears to be to the effect that if the injured employee was on the premises of the employer in going from his work, leaving within a reasonable time and following the customary or permitted route off the premises, the accident would be held to arise out of the employment. (Boyd on Workmen's Comp. sec. 486.) The leaving of the premises where one is employed is so closely connected with his employment as to render it a necessary incident thereto. It was stated in *Terlecki* v. *Strauss,* 85 N. J. L. 454, on page 455: "It is a necessary implication of the contract that the workman shall come to his work and shall leave with reasonable speed when his work is over." The fact that the employee in leaving the premises was following the usual and customary route is ordinarily considered of weight in deciding that the accident has taken place in the course of the employment. (Bradbury on Workmen's Comp.—3d ed.—473-477; Harper on Workmen's Comp. sec. 36.) Beyond question, an employee will generally be considered as being within the course of employment when he is going to or from his place of work while on the premises of the employer, if he is following the customary or permitted route in going to and from his work. It has been said that an employee must not choose a needlessly dangerous path to and from his work but that it is not necessary for him to use the path or place provided by his master,—that is, it is enough that it is customarily

used for these purposes by the workmen and that its use is not specifically forbidden. *Gane* v. *Norton Hill Colliery Co.* 2 B. W. C. C. 42; *McKee* v. *Great Northern Railway Co.* 1 id. 165; *Barnes* v. *Nunnery Coal Co.* 4 id. 43; 25 Harvard Law Review, 411, and cases cited.

As in this proceeding the accident happened before the employee reached the train of the defendant in error railway company, the question whether he was permitted to ride free has no controlling force on the question whether the accident arose out of and in the course of the employment. In view of all the circumstances in the case, by the great weight of authority as well as by sound reasoning, we think the conclusion follows that this accident arose out of and in the course of Miller's employment.

The judgment of the circuit court will be reversed and the award of the Industrial Commission will be confirmed.

*Judgment reversed.*