## Harriet Wicks, Appellee, v. Cuneo-Henneberry Company, Appellant.

### Gen. No. 28,832.

1. MASTER AND SERVANT—*contributory negligence of employee as question for jury.* Whether plaintiff, an employee of defendant, was contributorily negligent in hurrying along the sidewalk adjacent to defendant's building without looking particularly at an iron door in the sidewalk, over which she tripped, was a question for the jury.

2. HIGHWAYS AND STREETS—*condition of door in sidewalk as negligence as question of fact.* In an action for injuries received by plaintiff when she tripped and fell on an iron door in the sidewalk adjacent to defendant's building, where there was testimony that the iron doors were warped so that one projected above the sidewalk level from one-quarter to one and one-half inches, whether defendant was negligent in not maintaining the doors in a safe condition was for the jury.

3. EVIDENCE—*sufficiency of foundation for admission of X-ray pictures.* In an action for personal injuries, testimony of plaintiff's physician that he examined the injured hand and had X-ray pictures taken of it which he produced in court and testified that they were true and correct representations of plaintiff's hand at the time they were taken, the photographs were sufficiently identified to warrant their admission in evidence.

4. MASTER AND SERVANT—*propriety of instruction as to right of injured servant to recover for physician's services.* Although under the testimony in an action for personal injuries the only payment made or liability incurred by plaintiff for medical attention was a charge of $3, an instruction that if the jury found for plaintiff they should take into consideration a reasonable physician's bill necessarily incurred, if any, *held,* upon consideration of the entire record, not to have seriously prejudiced the defendant.

5. DAMAGES—*excessive verdict in personal injuries case.* Where the evidence in a personal injury case disclosed that plaintiff received a fracture of the index and middle fingers of her right hand; that she suffered considerable pain and was unable to work for several weeks; that her earning ability had been reduced; that she had been compelled at times to leave her employment on account of the hand; and that there was a limitation of motion in at least one of the fingers, as to which condition there was testimony that it would be permanent, a verdict for $3,000 could not be said to be excessive.

6. WORKMEN'S COMPENSATION—*when employer's business shown to be extra-hazardous.* Where defendant in an action for personal injuries was engaged in the printing and bookbinding business and was maintaining a building for that purpose of which it had the control and operation and a portion of the sidewalk in front of which was in its possession, and had power-driven machinery which was subject to statutory and municipal regulation, its business was extra-hazardous within the meaning of the Workmen's Compensation Act.

7. WORKMEN'S COMPENSATION—*whether sidewalk part of employers' premises within act as law question.* In an action for personal injuries where the facts are undisputed as to the place where plaintiff was injured, the question whether that part of the sidewalk where she fell was part of defendant's premises was a question of law.

8. WORKMEN'S COMPENSATION—*when accident to employee not within act.* Where plaintiff, an employee of defendant, fell over an iron door in the sidewalk of a public street adjacent to defendant's building, in which she was employed, and was injured as she was on the way to and about 30 feet from the employees' entrance, she was at the time on her way to work, not on defendant's premises, and the Workmen's Compensation Act did not apply so as to prevent a common-law action for damages.

THOMSON, J., dissenting.

Appeal by defendant from the Superior Court of Cook county; the Hon. JOSEPH SABATH, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1923. Affirmed. Opinion filed October 30, 1924. Rehearing denied November 13, 1924.

GALLAGHER, KOHLSAAT, RINAKER & WILKINSON, for appellant.

E. W. CLARK, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against the City of Chicago, William Hoyt and the Cuneo-Henneberry Company, a corporation, to recover damages for personal injuries. The court directed a verdict in favor of the City of Chicago and William Hoyt, the cause

was submitted to the jury as to the other remaining defendant, and there was a verdict and a judgment in favor of plaintiff in the sum of $3,000. The defendant, Cuneo-Henneberry Company, appeals.

The original declaration, among other things, charges that the defendants "were the owners, had possession and control of a certain building used by them in and about their business," and that it was the duty of the defendants to use reasonable diligence and to see that the adjoining sidewalk was in a reasonably safe condition for these rightfully using it; that the defendants failed in this respect and while plaintiff, who was employed by the defendant Cuneo-Henneberry Company, was walking on the sidewalk, a few feet from the entrance to the building in which that company conducted its business, she stumbled over an iron door in the sidewalk on account of it being warped and was injured. For convenience the Cuneo-Henneberry Company will be hereafter referred to as the defendant.

The defendant filed three pleas to the declaration: ( 1) the general issue (2) a special plea denying that it was in control or possession of the trapdoor on the sidewalk and (3) that plaintiff was in its employ and that both plaintiff and defendant were under the provisions of the Workmen's Compensation Act. Afterwards, by leave of court, the defendant filed a further special plea wherein it set up that at the time plaintiff was injured the defendant was engaged in the printing and bookbinding business and for the purpose of conducting such business it was maintaining "a structure," the building in which plaintiff was employed; that in connection with such business, the defendant used power-driven machinery and appliances which were subject to statutory and municipal regulations for the protection and safeguarding of its employees and the public; that the plaintiff did not, prior to the time she was injured, file a written notice of re-

jection or withdrawal from the operation of the Workmen's Compensation Act; that at the time plaintiff was injured, she was upon the sidewalk adjoining plaintiff's business near the entrance to the premises, proceeding to her work, and that the injuries she received arose out of and in the course of her employment. To these pleas plaintiff filed a replication, which she designated a "general replication," in which she sets up that she ought not to be barred by reason of anything alleged in defendant's pleas, because at the time she was not an employee of said defendant, nor did the injuries she suffered arise out of or in the course of her employment.

After the court directed verdicts in favor of the City of Chicago and William Hoyt, plaintiff by leave of court filed an amended declaration against Cuneo-Henneberry Company alone. In the second count of the amended declaration, it was averred that the defendant "was in the control and operation of a certain building" located at the intersection of West 22nd street and South Grove avenue, Chicago; that there was a public sidewalk in South Grove avenue, immediately adjacent to the building; that the defendant maintained upon the sidewalk two certain iron doors which were out of repair and warped, and that plaintiff while in the exercise of due care for her own safety, while walking over the iron doors, tripped, was thrown violently upon the sidewalk and injured.

The undisputed evidence is that about eight o'clock in the morning of February 2, 1922, plaintiff, a married woman, while on her way to work, she being an employee of the defendant, tripped against the edge of one of the iron doors, was thrown to the sidewalk and injured; that the iron doors where she fell were in the sidewalk about 25 or 30 feet from the entrance to the building in which the defendant conducted its business, which entrance was used by the employees of the defendant; that she had been employed by the

defendant about three weeks prior to the time she was injured and had passed over the sidewalk and had used the employees' entrance in going to and from her work; that plaintiff was employed in the bindery, which occupied the fifth and sixth floors of the building; that on all of the floors of the building defendant had machinery which was operated by electric power generated from a steam engine.

Plaintiff received a fracture of the proximal phalanges of the index and middle fingers of her right hand. Shortly after the accident, she was taken by the defendant to a doctor who reduced the fracture. This doctor treated her two or three times a week for about a month. He testified on behalf of the defendant that he made an examination of plaintiff's fingers about three weeks before the trial, which would be about fifteen months after the accident, and that he found a slight deformity of the index finger; that plaintiff was not able to completely flex her index finger; that there was about 10 per cent limitation; that the only trouble he found with the finger was in the plaintiff's inability to grip in closing her hand. He further testified that he had made a charge for his services and had been paid by the defendant. Dr. King, called on behalf of plaintiff, testified that he examined plaintiff's injured hand in April, 1922 (which was about two months after the accident), and that he found that the bones in plaintiff's injured fingers were in a malposition and appeared to be thickened; that the fracture had not been properly reduced, or, if it had been so reduced, it had not remained in that position during the process of healing; that there was a very marked bowing of those bones; that he made another examination about a month before the trial and found that plaintiff was unable to close her hand; that she could not grasp things, and that when she attempted to do so, it would produce

pain; that the condition of her hand in his opinion was permanent; that he had caused X-ray pictures of the hand to be taken. They were introduced in evidence and appear in the record.

Plaintiff testified that prior to the accident she had been employed about seven years as a bindery worker; that immediately after she fell on the sidewalk and was injured she was taken into defendant's factory and placed in a chair; that she fainted; that she could not straighten her fingers; that after receiving aid there, she was taken to the doctor's office where her hand received attention and that the doctor continued to treat her for about four weeks; that afterwards, when the doctor suggested that she go to work and try flexing her fingers a little, as he thought the exercise would aid her fingers, that she returned to defendant's plant for about a half day but was unable to continue on account of the pain in her hand; that about two months afterwards she went to work for another printing company and worked about three days; that the work caused her hand to become swollen, stiff and pained her; that she afterwards secured other employment; that before the accident she was receiving $35 to $40 per week; that since the accident she was not able to earn more than $20 per week; that she could not work a full week, because her hand would get sore and she would have to lay off a day; that since the accident until the time of the trial, which was about sixteen months, she had worked about three months. She further testified that she was unable to straighten her fingers and that she could not bring them nearer than one inch to the palm of her hand; that after the accident when she secured other employment, she was laid off on account of her inability to properly perform her duties on account of the injured fingers.

The jury returned a general verdict in favor of the plaintiff and against the defendant for $3,000 and

returned a special finding, which was signed by all of the jurors and was as follows: "We the jury from the evidence that plaintiff was injured on the premises of the defendant Cuneo-Henneberry Company."

1. Defendant contends that the judgment is wrong and should be reversed because the evidence discloses that plaintiff failed to exercise ordinary care for her own safety, and that the manifest weight of the evidence shows that the defendant was guilty of no negligence. In support of this it is said that since the evidence discloses that the iron doors in the sidewalk were about 25 or 30 feet from the employee's entrance to defendant's place of business, and since it further discloses that plaintiff did not look at the iron door as she was passing over it to ascertain whether there was any defect, this shows that plaintiff failed to exercise ordinary care for her own safety. And the further argument is that it appears from the evidence that the edge of the door against which plaintiff claims to have tripped protruded not to exceed one-quarter of an inch, and that this showed that the defendant was guilty of no negligence in maintaining the doors. The evidence tends to show that plaintiff proceeded to her work on the morning in question, got off the car at 22nd street and Grove avenue, proceeded south on the sidewalk towards the entrance used by the employees; that the weather was cold and there was considerable wind; that there were two sets of iron doors in the sidewalk over which plaintiff was required to pass in going to her employment; that after she stumbled, she looked back and saw that the corners of the iron door against which she had tripped were warped up; that she did not look particularly at the door before she fell; that there was some coal on the door; that she was walking on rapidly just before she fell, because it was cold and blowing. Another witness testified for the plaintiff that on the morning in question, the corner of one of the doors was warped

or bent up about one and one-half inches.  Other witnesses testified that the doors were not warped and one door was not more than one-quarter inch higher than the other.

The law required plaintiff to exercise due care for her own safety before she would be entitled to recover, but this did not require that she continually keep her eyes down on the walk in front of her as she was walking.  We think it clear, under the evidence, that whether plaintiff was exercising due care for her own safety and whether defendant was negligent in failing to keep the iron doors in a proper state of repair were for the jury.  And upon a careful consideration of the record, we are unable to say that the finding of the jury in plaintiff's favor on both of these questions is against the manifest weight of the evidence.

2.  It is further contended that the court erred in admitting in evidence the X-ray photographs taken of the plaintiff's injured hand, because they were not sufficiently identified.  Dr. King testified that he examined plaintiff's hand and had an X-ray photograph taken which he produced in court.  He further testified that the photographs were a true and correct representation of plaintiff's hand at the time they were taken.  We think this was sufficient.

3.  It is further argued that the court erred in refusing to instruct the jury that plaintiff could not recover for medical and surgical expenses incurred, and that there was further error in instructing the jury that plaintiff was entitled to recover for such expenses.  In this connection it is said that plaintiff alleged in the declaration that she was damaged by being compelled to spend large sums of money in seeking to regain her health, and that the only evidence of this was the testimony of Dr. King and Dr. O'Connell; that Dr. King testified that he never gave the plaintiff any treatment; that she paid him $3 when he made the first examination of her hand, and that

he expected to be paid for testifying in court; that Dr. O'Connell testified that he treated the plaintiff two or three times a week for about a month, when he made a charge for his services, and that he had been paid. Defendant offered an instruction which the court refused to give to the effect that no recovery could be allowed for medical or surgical treatment, because there was no evidence of a specific amount which plaintiff had paid or become liable for. This instruction was properly refused, for the reason that the evidence showed that Dr. King had made a specific charge of $3. The court gave an instruction on behalf of the plaintiff on the question of damages which told the jury that if they found for the plaintiff, in determining the damages, they should take into consideration, among other matter, a reasonable physician's bill necessarily incurred, if any. There being no evidence that either of the doctors claimed that plaintiff owed them for the services they had performed, nor evidence as to the reasonable value of such services, of course, the element of physicians' bills could not properly be allowed by the jury. Under the evidence plaintiff was entitled to recover only the $3. Upon a consideration of the entire record in this respect, we cannot say that the defendant was seriously prejudiced by the instruction complained of. Nor do we agree with the contention made by the defendant that the damages are so excessive as to warrant a reversal of the judgment. The evidence discloses that plaintiff received a fracture of the index and middle finger of the right hand; that she suffered considerable pain and was unable to work for a number of weeks after she was injured; that she was unable to obtain as much wages after the injury as she did before she was injured; that she was compelled at different times to leave her employment on account of her injured hand; that there was a limitation of motion in at least one of her fingers, the index

finger, and one of the doctors testified that this condition was permanent. In these circumstances we do not think that we would be warranted in disturbing the verdict on the ground that it was excessive. *Posch v. Chicago Rys. Co.,* 221 Ill. App. 241; *Delohery v. Quinlan,* 210 Ill. App. 321; *Girdzus v. Etten,* 211 Ill. App. 524.

4. The defendant further contends that the court should have directed a verdict in its favor because plaintiff was entitled to receive compensation under the Workmen's Compensation Act of this State; that plaintiff and defendant were both under the Compensation Act, and that plaintiff's injuries arose out of and in the course of her employment. This question is not at all free from difficulty and has received very careful consideration at our hands.

By section 3 of the Compensation Act [Cahill's Ill. St. ch. 48, ¶ 202], it is provided that act shall apply automatically to all employers and all their employees engaged in any enterprise or business which is by that section declared to be extra-hazardous. Subparagraph 1 of that section provides that: "The erection, maintaining * * * of any structure, except as provided in subparagraph 8 of this section" is extra-hazardous. By subparagraph 8, it is provided that: "In any enterprise in which statutory or municipal ordinance regulations are not or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extra-hazardous." But counsel for plaintiff contends that since plaintiff filed a replication to the plea, setting up the Workmen's Compensation Act as a defense, it thereby raised a question of fact for the jury whether at the time of the accident the relation of employer and employee existed. And, further, that the business conducted by

the defendant is not extra-hazardous as defined by the statute; that the defendant did not offer any evidence " as to what activities were engaged in in the plant referred to;" that the only evidence in this respect was the testimony of one Porter to the effect that the defendant had in its premises electrically driven machinery on all of the floors of the building. It is true that defendant offered very little evidence as to the nature of its business or plant, but it set up in its plea that it was in the printing and bookbinding business and maintained a structure, the building in which it conducted its business and in which plaintiff performed her duties; that it employed power-driven machinery which is subject to the statutory and municipal regulations for the protection and safeguarding of defendant's employees. Plaintiff's replication did not deny these allegations. It was not a general replication, because it only denied that plaintiff at the time she was injured was an employee of the defendant, and that her injuries did not arise out of her employment. The undisputed evidence offered by the plaintiff, as well as by the defendant, shows that plaintiff was employed by the defendant. And it is a rule of common-law pleading that where a plea sets up affirmative matter which is not denied, the matter so set up is admitted. *Hopkins v. Medley*, 97 Ill. 402. This being the rule of law, it stood admitted of record that at the time plaintiff was injured, defendant was engaged in the printing and bookbinding business and was maintaining a building for that purpose in which it had power-driven machinery which was subject to statutory and municipal regulations for the safeguarding of its employees and the public. In these circumstances the defendant's business was extra-hazardous within the meaning of subparagraphs 1 and 8, sec. 3 of the Compensation Act. Furthermore, the amended declaration charged that the defendant had the control and operation of a certain building and was also

in possession of a portion of the public sidewalk adjacent to the building. This, taken in connection with the other matters which we have referred to, clearly shows that the defendant's business was within the Compensation Act.

The principal question for decision is did the injuries which plaintiff received on her way to work arise out of and in the course of her employment? The general rule on this question appears to be that one's employment does not begin until she has reached the place where she is to go to work and does not continue after she has left the employer's premises. *Schweiss v. Industrial Commission,* 292 Ill. 90; *Wabash R. Co. v. Industrial Commission,* 294 Ill. 119. All of the authorities seem to hold that where one is going to or from his place of employment and is injured, the Compensation Act does not apply, unless the employee is performing some services for the employer. In the instant case, therefore, the controlling question is, was plaintiff, at the time she was injured, upon defendant's premises? If she was, the Compensation Act would apply. If she was not, the act would not be applicable, and she would have her action at common law. The jury specially found that she was upon defendant's premises when she was injured. This finding was contrary to the general verdict in plaintiff's favor, because if she were upon the defendant's premises at the time she was injured, the Compensation Act would apply and the verdict should have been for the defendant. But since the facts are undisputed as to where plaintiff was when she was injured, we think the question whether that part of the sidewalk where the plaintiff fell was part of the defendant's premises was a question of law. The undisputed evidence in this respect is that plaintiff was upon a public sidewalk on a public street immediately adjoining defendant's plant; that plaintiff and other employees necessarily passed over the sidewalk to enter the plant

where they were employed, and in doing so they passed over the iron doors in the sidewalk which were located from 25 to 30 feet from the entrance to the building. We think these undisputed facts show that plaintiff was on her way to work, not on defendant's premises, and under the rule announced in the cases above cited, the Compensation Act did not apply, and therefore her common-law remedy was not affected.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

TAYLOR, J., concurs.

MR. JUSTICE THOMSON dissenting: In my opinion this is a case which comes within the Workmen's Compensation Act. As said in the majority opinion, if the plaintiff was injured while on the defendant's premises, and on her way to work, then her injury arose out of and in the course of her employment. *Wabash R. Co. v. Industrial Commission*, 294 Ill. 119; *Western Coal & Mining Co. v. Industrial Commission*, 296 Ill. 408. The evidence shows that the main entrance to the defendant's plant was on 22nd street, while the entrance for employees, which was always used by the plaintiff, was on Grove street. It is clear from the photographs in the record that this was a side street, little used as a public highway. There were railroad switch tracks in Grove street, leading to a loading platform projecting over the sidewalk from the defendant's plant and the sidewalk was used by the employees in going to and from the employees' entrance to the plant. It further appears from these photographs that there were two area ways cut through this sidewalk, through which access was had to spaces beneath the sidewalk and from there into the basement of the defendant's building. Each of these area ways was protected with double iron doors, on one of which the plaintiff tripped and fell, which, when closed, were supposed to be flush with the sidewalk surface and became a part of that surface. The photographs show

that on the side next to the building these doors and their framework ran right up to the wall of the building so that the wall and the doors presented a continuous surface with a right angle at the sidewalk line. In other words, the doors were an entrance to the defendant's building through the sidewalk, maintained by the defendant at the sidewalk level, as a part of the sidewalk, by permit from the city. In my opinion, it is entirely clear that in such a situation the doors should be considered as a part of the defendant's premises. The jury expressly so found by their special verdict. The fact that this sidewalk was open to the public and that passers-by, other than the employees, might be subjected to the same danger as that which this plaintiff encountered, does not affect the situation, in my opinion. As our Supreme Court said in *Mueller Const. Co. v. Industrial Board*, 283 Ill. 148, 157, the criterion "is not that other persons are exposed to the same danger, but rather that the employment renders the workmen peculiarly subject to the danger." To reach her employment this plaintiff was required to go to the employees' entrance and to reach that entrance she had to pass over this sidewalk daily and she could not do that without walking over these sidewalk entrances to the defendant's premises. If the iron doors over these entrances were defective and dangerous, she was thus subjected to that danger by the conditions of her employment. If these trapdoor entrances to the defendant's premises had been located in the walk, at the employees' entrance, but inside the building line of defendant's building, there would be no possible doubt that they would be regarded as a part of the premises. In my opinion, it should and does make no difference that they were located a few feet away from the employees entrance and instead of extending from the building line, in, they extended from that line, out, into the sidewalk.

I do not disagree with the other points passed upon in the majority opinion, treating the case as a common-law right of action. But believing that the situation presents a case within the Compensation Act, I am of the opinion the judgment appealed from should be reversed.