(No. 1725—

VERA D. FOSTER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 8, 1935.*

BOYER & LEONARD, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

On April 14, 1930, and for about six months prior thereto, claimant was employed by the respondent as a maintenance patrolman at a salary of $125.00 per month. He patrolled the road between Foosland and Five Points, in Champaign County, which road commenced about three miles west of Champaign and extended in a northerly direction about thirteen miles to the point where it intersected Route 119, running east and west; thence west on Route 119 to Fisher, thence north through Fisher to Foosland. Both the north and south road, and Route 119 which extended in an easterly and westerly direction, consisted of concrete slabs about nine feet in width, with fifteen-foot dirt shoulders. The intersection of the north and south road with Route 119 was on a Y.

Claimant had been unloading gravel for the State at Mansfield, and after he had finished such work, went back on his own patrol, and filled ruts on such road. About five or 5:20 o'clock in the evening he started home in a Model T Ford truck owned by the State and provided for his use. He was driving in a northerly direction and when he came to the Y at the intersection of Route 119, the car he was driving collided with another motor car driven by one Rose Cantner, as the result of which the car driven by the claimant was badly damaged and claimant's head struck the top of the car, causing a bump on the side of his head and a cut from which the blood flowed. He was taken to a doctor and then went home. He did not work for about a week after the accident. Then he started to work and worked a half day. Shortly after the accident his mind became affected, he developed hallucinations, and his mental condition gradually became worse. He was treated by several doctors and at the suggestion of his family doctor, was taken to the Norbury Sanitorium at Jack-

sonville, Illinois, on September 17, 1930. He was taken to such institution by Mr. Apple, head engineer of the respondent at the Paris, Illinois, office, and Mr. Gordon, supervisor and patrolman for the respondent for that district. At said sanitorium he was treated for post traumatic psychosis, and remained there until he was discharged as improved on December 23, 1930. He returned to his work on January 5, 1931. His salary was paid in full to July 1, 1930. The expenses incurred by him for medical and hospital services, as shown by his Bill of Particulars herein, are as follows:

| | |
|---|---:|
| Norbury Sanitorium Company | $727.61 |
| Dr. L. O. Sale | 59.50 |
| Dr. Nortell | 10.00 |

making a total of $797.11, of which amount he paid only the bill of Dr. Nortell in the amount of $10.00.

Claimant now seeks to recover the amount of his medical and hospital bills as above set forth, and compensation for the period from July 1, 1930, to January 5, 1931, to-wit, 26 6/7 weeks. At the time of the accident his wages were $125.00 per month, and he had two children under sixteen years of age.

This court has held in numerous cases that in the maintenance of its hard roads, the State is engaged in an extra hazardous business or enterprise within the meaning of those words as used in Section three (3) of the Workmen's Compensation Act.

Inasmuch as the claimant was on his way home at the time of the accident, the question arises as to whether the injuries sustained by him arose out of and in the course of his employment. In considering a similar question, the Supreme Court in the case of *Fairbank Co.* vs. *Ind. Com.*, 285 Ill. 11, said:

"The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment or incidental to it. When the work for the day is ended and the employee has left the premises of his employer to go to his home, the liability of the employer ceases unless after leaving the plant of the employer the employee is incidentally performing some act for the employer under his contract of employment. * * * * * * The injury occurs in the course of the employment within the meaning of the Workmen's Compensation Act when it occurs within the period of the employment, at a place where the employee may reasonably be and while he is reasonably fulfilling.

the duties of his employment or is engaged in doing something incidental to it."

In the case of *Schweiss* vs. *Ind. Com.*, 292 Ill. 90, the Supreme Court said:

"The general rule followed in construing the Workmen's Compensation Act appears to be that a man's employment does not begin until he has reached the place where he has to work or the scene of his duty, and it does not continue after he has left unless the conveyance in which he travels to or leaves the premises is furnished by his employer. (Bradbury on Workmen's Compensation, 3d ed., 468). The controlling factor in determining whether an injury arose out of the employment is whether the employee was within the orbit, area or sphere of his duty, and it has been usually held that if an employee is injured on the premises of the employer in going to or from work he is entitled to compensation for such injuries. (1 Honnold on Workmen's Compensation, Sec. 122; Bradbury on Workmen's Compensation, 3d ed. 473, and authorities cited.) The employment is not limited to the exact moment when the workman reaches the place where he is to begin his work and to the moment when he ceases that work. It includes a reasonable amount of time and space before and after ceasing actual employment, having in mind all the circumstances surrounding the accident. (Boyd on Workmen's Compensation, Sec. 486.) An accident befalling the workman on his way to or from work cannot be held to arise out of the employment where he has not yet come within or has left the sphere of his employment, and where an employee, without knowledge of the employer, uses a way other than that provided by him, an accident thereon cannot be said to arise out of the employment. (*Corpus Juris*, treatise on Workmen's Compensation Acts, Sec. 68.) Whether an employee in going to or returning from the place of his employment is in the line of his employment is governed and controlled by the particular circumstances and facts of each case. There must be a line beyond which the liability of the employer cannot continue, (and this would apply to the beginning of the employee's work as well as the ending), and the question where that line is to be drawn is a question of fact. (Elliott on Workmen's Compensation Acts, 7th ed. 41.) The area of an employee's duty may be readily ascertained in some cases, as where the premises are confined to a single building or plant or enclosure, and may be much more difficult of ascertainment in other cases, as, for example, where a railroad company's shops and yards and right of way extend for miles on a main line of track of the railroad and for a considerable distance on switch tracks."

In the case of *Scully* vs. *Ind. Com.*, 284 Ill. 567, the court said:

"An injury may occur within the course of the employment and arise out of it, even though it happen while the employee is on his way to or from his usual place of employment or while engaged in the doing of an act that is necessary to or an incident of the employment."

In the case of *Wabash Ry. Co.* vs. *Ind. Com.*, 294 Ill. 119, the court quoted with approval the decision in the case of *Schweiss* vs. *Ind. Com.*, and said:

"One of the controlling factors in determining the question here under consideration is whether the employee at the time of the accident was within the orbit, area, scope or sphere of his employment."

A similar question was involved in the case of *Irwin-Neilsen & Co.* vs. *Ind. Com.*, 346 Ill. 89. In that case the Supreme Court analyzed a number of its previous decisions on the question, and concluded as follows (p. 93):

"Plaintiff in error contends that as Sawyer was on the way to his home rather than to the office of the company he was not in the course of his employment. It has uniformly been held that when an employee travels for his employer and returns after working hours he remains in the course of his employment on the way to his home."

It appears from the cases cited that although the question here involved has been considered by the Supreme Court in numerous cases, yet the decision in practically every case has been governed by facts which were peculiar to that case, and different in some respects from practically every other decided case. After reviewing the cases on the question and considering the circumstances of this case, and particularly the fact that the claimant at the time of the accident was driving a car furnished by the State; that the accident occurred in the territory which he was required to patrol; and that at the time of the accident he was doing something which was incidental to the duties of his employment; we have no hesitancy in holding that the accident in question arose out of and in the course of his employment and that he is therefore entitled to compensation under the terms and provisions of the Workmen's Compensation Act.

Under the evidence, claimant is entitled to compensation from July 1, 1930, to January 5, 1931, to-wit, 26 6/7 weeks, at the rate of $16.00 per week, to-wit, $429.71.

With reference to the medical and hospital services incurred by him and for which he seeks to be paid, another complication arises. There is no question but what the bills of Dr. Sale in the amount of $59.50, and Dr. Nortell in the amount of $10.00, should be paid. The difficulty arises with the bill of the Norbury Sanitorium Company in the amount of $727.61. Claimant might have been treated at a State institution in the

first instance had such treatment been offered him, but there is nothing in the record to indicate that such treatment was offered to him at that time. The evidence discloses that two of his superior officers, to-wit, Mr. Apple and Mr. Gordon, took him to the Norbury Sanitorium at Jacksonville. He remained at such sanitorium until he was discharged on December 23, 1930. It appears from the evidence, however, that Fred Tarrant, Engineer of Maintenance of the respondent, advised the Norbury Sanitorium on October 30, 1930, that he did not feel that the State should be responsible for Foster's maintenance in a private sanitorium, and that it would be necessary for such sanitorium to look to Foster's family or relatives for reimbursement. No notice to that effect was given to Foster at that time or later. However, it appears that Mr. Tarrant wrote to Mrs. Foster on November 24, 1930, enclosing a copy of his previous letter to the Norbury Sanitorium, and advising her that he did not feel that the State was obligated in any way to provide maintenance for her husband in a private sanitorium. Under the circumstances, claimant should have been removed to a State institution within a reasonable time after the notice by Mr. Tarrant to Mrs. Foster as aforesaid, and in default thereof, the State should not thereafter be liable for his maintenance at the Norbury Sanitorium. We feel that a week from the receipt of such notice by Mrs. Foster was a reasonable time within which to have claimant removed to a State institution, and that therefore the State is not responsible for his maintenance at the Norbury Sanitorium after December 2, 1930.

Claimant is therefore entitled to the cost of his care and maintenance at the Norbury Sanitorium from September 17, 1930, to December 2, 1930; the pro rata amount due for such period being $568.50.

Claimant is therefore entitled to compensation as above set forth in the amount of $429.71 and is also entitled to the sum of $638.00 for expenses incurred by him for medical and hospital services as follows, to-wit:

| | |
|---|---|
| Norbury Sanitorium | $568.50 |
| Dr. L. O. Sale | 59.50 |
| Dr. Nortell | 10.00 |

Award is therefore hereby entered in favor of the claimant for the sum of $1,067.71.

Inasmuch as the bills of the Norbury Sanitorium and Dr. L. O. Sale have not been paid by claimant, it is further ordered that the vouchers for said award be issued and be payable as follows, to-wit:

| | |
|---|---|
| To Vera D. Foster..................................... | $439.71 |
| To Vera D. Foster, for the use of the Norbury Sanitorium. | 568.50 |
| To Vera D. Foster, for the use of Dr. L. O. Sale........... | 59.50 |
| Total.......................................... | $1,067.71 |