ILLINOIS EMERGENCY RELIEF COMMISSION, No. 30.

PEARL JENKINS, Claimant vs. ILLINOIS EMERGENCY RELIEF COMMISSION, Respondent.

*Opinion filed January 12, 1938.*

812

MR. JUSTICE LINSCOTT delivered the opinion of the court:

On November 20, 1934, claimants filed their claim against the State of Illinois under the Workmen's Compensation Act claiming the sum of Forty-eight Hundred Dollars ($4,800.00) alleged to be due on account of the death of the husband and father, Frank Jenkins, which claim was known as No. 2541. Evidence was taken under this claim, briefs and arguments were filed by counsel for both sides, and thereafter, this court filed an opinion denying an award for compensation on the ground that the facts shown in the record were just as pertinent to show that Jenkins was an independent contractor as to prove that he was an employee, and for the reason that claimants did not show that Jenkins was an employee of the respondent, an award was denied.

A petition for rehearing was filed by claimants and on June 10, 1937, an order was entered in this court granting the petition and re-opening the case for further evidence.

On August 13, 1937, a transcript of this new evidence was filed in accordance with the rules of this court.

It appears from the evidence that on the 18th day of October, 1934, Frank Jenkins died as a result of injuries sustained on that day while he was employed as a trucker for the Williamson County Emergency Relief Committee, which was under the direct supervision and control of the Illinois Emergency Relief Commission.

During the year 1934, the State of Illinois, through one of its agencies, the Illinois Relief Commission, operated a central food depot located in the Goddard Building in the City of Marion, Williamson County, Illinois. This commission was dispensing food and other necessaries of life to the poor of Williamson County. The prosecution of this work required the transportation of surplus food supplies from railroads to the central food depot in Marion,—their storage warehouse—and from there a distribution was had to the relief clients throughout the county. The central commodity deposit was a three story and basement brick building, approximately 60 feet wide by 100 feet long, and between 75 and 100 men worked at the warehouse at different times, and the record shows that in the handling of the storage and distribution of these surplus commodities, trucks were used. The Commission did not own the trucks, but hired at least

four men to carry out such trucking operations as were necessary. The deceased was one of those so employed. He furnished his own truck, receiving for the work done by him, checks averaging from $200.00 to $300.00 monthly from the State of Illinois. These checks were based upon the amount and kind of work he performed, payment for certain kinds of hauling being on a weight and mileage basis, payment for other kinds of hauling on a trip basis, while still other hauling was paid upon an hourly basis. Witnesses estimated his average annual income from the state for this work at $3,500.00. The respondent offered no evidence in denial of the earnings of the deceased.

Under the prevailing rates, one-half of the payment was for the use of the truck, and one-half for the services of the driver.

On the morning of October 18, 1934, Frank Jenkins and other employees of the Illinois Emergency Relief Commission were unloading his truck at the central food depot. A son of Jenkins was also employed in this work and worked along with his father. He got upon the truck to move it, and when he released the brake, the truck rolled backward, crushing Frank Jenkins between the truck body and the wall of the building and injuring him so severely that he died twelve hours later.

The deceased was survived by Pearl Jenkins, his wife, the adult son, John, and the two minor sons, Frank Weaver Jenkins, age 13 and Billy Jean Jenkins, age 8.

The additional evidence heard was upon the question of the degree of control exercised by the Illinois Emergency Relief Commission over Jenkins' activities in the trucking done by him.

At the time Jenkins received his injury and for a considerable time prior thereto, this warehouse or food depot was in charge of a Depot Superintendent, George Morris. Morris testified that he was superintendent and boss over the truck, and that he told the drivers what they should do, and how they should do it and when they should do it, and this was true with reference to Frank Jenkins. Morris testified that he required the drivers to assist in loading and unloading the trucks at the food depot, and that the drivers did what he told them to do. There were various doors at the

food depot at which trucks could be loaded and unloaded, and drivers were required to load or unload at the particular door which Morris directed. When Jenkins' services were needed, Morris would notify him, usually the day before, and would advise him at what time he should report, and Jenkins would report at the appointed time. Occasionally several car loads were standing on side tracks, waiting to be unloaded, and Jenkins would unload these cars under the direction of Morris, and when commodities were loaded onto Jenkins' truck for distribution throughout the county, Morris directed how this work should be done, in detail as to each delivery, and he would take what really amounted to a receipt in triplicate for deliveries, and he was instructed that commodities for which orders were not signed must be returned to the food depot. Jenkins was not permitted to engage in hauling for others or obtaining private employment when he was making distribution of commodities. Distribution was made from Marion to smaller towns in that county, and in doing this, he was instructed as to the order in which distribution to these towns should be made, the time he should arrive at and how long he should remain in the various towns on the itinerary, and he followed these instructions.

On the morning of October 18, 1934, Jenkins reported for work with a low stake body on his truck. Morris objected and Jenkins returned home for longer stakes and placed them in position on his truck before proceeding on the job which resulted in his death.

It has been repeatedly held that where the person for whom service is rendered retains the right to control the details of the work and the method or manner of its performance, the relation of employer and employee exists. It has also been held that when the party for whom trucking is performed controls the loading and unloading of the truck, the destinations of the loads, the manner of handling the loads at such destinations, the kind and quantity of material hauled, the distances travelled by the truck, the amount of pay received for the loads, the hours of employment, the time at which various deliveries shall be made and various trucking operations performed, and the manner in which the truck shall be equipped, the trucker is an employee and not an independent contractor. *VanWatermullen* vs. *Ind. Com.,* 343 Ill. 73.

The fact that Jenkins owned his own truck is not inconsistent with an employee relationship, and the fact that he was paid for a part of his work on a weight and mileage basis does not make him an independent contractor.

Our Supreme Court has also held that in determining whether one is an employee, the Workmen's Compensation Act is to be liberally and broadly construed, and the State of Illinois, in distributing surplus commodities by motor driven vehicles, and employing four truck drivers and at least fifteen laborers in connection with such distribution, was operating under and subject to the Illinois Workmen's Compensation Act.

The accident was witnessed by Tom Lewis, who was assisting Jenkins. Jenkins was instructed by George Morris to go back to the box car and secure another load. It was when the truck was about to be started that Jenkins received the injury which caused his death.

All medicine and hospital bills in the sum of $31.00 were assumed by Pearl Jenkins, wife of Frank Jenkins.

In view of the facts in this case, the court finds:

1. That the deceased and the respondent were on the 18th day of October, 1934, operating under the provisions of the Workmen's Compensation Act; that on the date last above mentioned, Frank Jenkins, the deceased, sustained accidental injuries which did arise out of, and in the course of his employment, resulting in the death of said deceased twelve hours later; that notice of said accident was given said respondent and claim for compensation on account thereof was made on said respondent within the time required under the provisions of the Workmen's Compensation Act.

2. That the deceased at the time of injury had two children under sixteen years of age.

3. That the necessary first aid had not been provided by the respondent herein.

4. That said deceased left him surviving as his sole beneficiaries under section seven, paragraph (a) of said Act, as amended, his widow, Pearl Jenkins, the petitioner, and two minor sons, Frank Weaver Jenkins, age 13 and Billy Jean Jenkins, age 8, all of whom were totally dependent upon the deceased.

5. That claimant has agreed to dismiss the claim which is known as *Pearl Jenkins, widow, et al.* vs. *State of Illinois,*

820

No. 2541, which is now pending before this court, and has signed releases and waivers for the Illinois Emergency Relief Commission, and has agreed to accept the sum of $3,000.00 in full settlement of her claim, upon approval of this court, and the court finds that the Illinois Emergency Relief Commission has agreed to pay said Pearl Jenkins, the said sum of $3,000.00.

Such amount is within the sum to which the said Pearl Jenkins and said minor children would be entitled under the terms of the Workmen's Compensation Act. Such settlement is therefore approved upon condition that said amount be paid in cash and that such portion thereof as would otherwise be paid to the minor children of said decedent shall be paid to their mother, Pearl Jenkins, for the support of said minors and upon the further condition that case No. 2541 now pending in this court shall be dismissed; such payment to be made out of funds allocated to the Illinois Emergency Relief Commission and now available for such payment.

Therefore, this court approves the settlement of this Cause known as No. 30 and directs the dismissal of cause known as No. 2541.