(No. 15287.—Judgment affirmed.)

THE IRA J. MIX DAIRY COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ANNA MCDONOUGH, Admx., Plaintiff in Error.)

*Opinion filed June 20, 1923.*

1. WORKMEN'S COMPENSATION—*claimant must prove that accidental death arose out of employment.* The claimant for compensation for an accidental death has the burden of proving not only that such death occurred in the course of the employment of the deceased but also that it arose out of the employment, and such fact must be established either by direct evidence or by proof of circumstances from which the conclusion can be fairly drawn, without conjecture or surmise, that there was a causal connection between the employment and the injury.

2. SAME—*when inference may be drawn that death arose out of employment..* Where there is no direct evidence as to the cause of an accidental death occurring in the course of the deceased's employment, an inference that the death arose out of the employment may be drawn from the nature of the employment, as involving danger peculiar to the work or incidental to the character of the business.

3. SAME—*when death of driver of milk wagon is not shown to have arisen out of employment.* Where an employee of a dairy company, whose duties were to deliver milk and dairy products to customers before breakfast, was shot and killed in the early morning on the premises of one of his customers by an unknown person, no inference can be drawn that the death arose out of the employment, there being no evidence that the danger of an assault or personal injury was peculiar to the business of delivering milk.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. LEE W. CARRIER, Judge, presiding.

JOSEPH A. RICKER, and OSCAR F. NELSON, (G. A. BURESH, of counsel,) for plaintiff in error.

EDWARD W. RAWLINS, and PETER F. SCHRAMM, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

James McDonough was employed by the defendant in error, the Ira J. Mix Dairy Company, as driver of a horse and wagon to deliver milk and dairy products to customers in the city of Chicago. There were about 165 customers on his route, and he was required to start deliveries early enough to complete them before breakfast. He was paid $41 a week for that service, and was also authorized to sell milk and butter to cash customers and was allowed a commission on such sales which amounted to about $7 a week. On the morning of May 5, 1921, he left his home at 1:15 o'clock and took his load to make deliveries. Between 3:00 and 3:30 o'clock in the morning he had delivered milk to 22 customers and came to Shields avenue and Fifty-eighth street, where he made his twenty-third delivery at 5838 Shields avenue. Elizabeth Burkhart, who lived at 338 West Fifty-ninth street, about 225 feet from the place of this last delivery, heard a shot and two screams, and looking out of her window she saw an object lying in the areaway between 5838 and 5840 Shields avenue which appeared to be the body of a man. She called the police by telephone, and they found the body of McDonough lying in the areaway and his horse and wagon were standing near by in the street. He had been shot through the body and killed and his clothing was powder-burned, showing that the shot causing the bullet wound was at very close range. There were milk bottles broken and milk scattered about, and there was a rack or basket for carrying milk bottles and a lantern near the body. Two men's caps were found about 150 feet from the body, but Mrs. Burkhart did not hear any scuffle or anyone running away and the perpetrators of the murder were never discovered.

The plaintiff in error, Anna McDonough, a sister of James McDonough and administratrix of his estate, made

application to the Industrial Commission for an allowance of compensation, alleging dependency of Cresentia McDonough, another sister of the deceased, and there was a hearing before an arbitrator at which the facts above stated were proved and not disputed. There was also evidence of the dependency of the sister Cresentia, and Anna McDonough, the administratrix, testified that McDonough carried a brown-leather pouch, closed with a drawstring, in which he usually had $8, $10 or $12; that she kept the pouch for him at night under her pillow, and that she gave it to him the morning of his death before he left home and had not seen it since his death; that so far as she knew, the pouch and contents were gone when the body was found.

The arbitrator made an award in favor of Cresentia McDonough of $22.50 per week for 116 weeks and $10.80 for one week as a collateral heir dependent twenty-eight per cent upon the earnings of the deceased. On a review of the award of the arbitrator by the Industrial Commission there was further evidence concerning dependency of Cresentia, and testimony that the hat or cap of the deceased was a few feet from his body; that the body was removed to a morgue, and that in the pocket of the deceased there were found a knife and such other things as are ordinarily carried by men and a pocket-book containing $6 or $7, which, according to the recollection of the witness, was a small one, which was fastened and unfastened with a snap. The Industrial Commission made an award to Cresentia, as a collateral heir and dependent, of $12 per week for 72 weeks and $11 for one week, making a total sum of $875 as compensation. On a writ of *certiorari* from the circuit court of Cook county the award of the Industrial Commission was set aside and the record quashed. This court allowed a writ of error.

The plaintiff in error, making a claim for compensation for the death of James McDonough under the provisions of the Workmen's Compensation act, had the affirmative

of the issue and was required to offer evidence sufficient to justify a conclusion that his death was the result of an accidental injury occurring in the course of his employment and arising out of the employment. The fact that the alleged death occurred and that it was in the course of the employment was proved and is not disputed, and the question to be determined is whether the evidence established the fact that the injury arose out of the employment. For that purpose the evidence must show some causal connection between the employment and the injury. It was not necessary that this should be done by direct evidence, which is often impossible, but the fact could be established by proof of circumstances from which the conclusion could fairly be drawn. (*Hydrox Chemical Co.* v. *Industrial Com.* 291 Ill. 579; *Vulcan Detinning Co.* v. *Industrial Com.* 295 id. 141.) To sustain an award the evidence must be such as would induce a reasonable man to draw an inference that the injury was due to the employment and arose out of the relation between the injured person and his employer, and this cannot rest upon conjecture or surmise. (*Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board,* 276 Ill. 454; *Savoy Hotel Co.* v. *Industrial Board,* 279 id. 329; *Pekin Cooperage Co.* v. *Industrial Com.* 285 id. 31; *Edelweiss Gardens* v. *Industrial Com.* 290 id. 459; *Decatur Construction Co.* v. *Industrial Com.* 296 id. 290.) Where there is no direct evidence there may be something in the nature of the employment involving danger peculiar to the work or incidental to the character of the business. Employment as a watchman to protect the property of the employer is such a case, because from the nature of the employment persons are liable to attack the watchman, and he may be injured or killed by intruders, trespassers, robbers or burglars. In such a case it is a fair inference, in the absence of direct proof, that an assault upon the watchman arose out of his employment. (*Ohio Building Vault*

*Co.* v. *Industrial Board,* 277 Ill. 96.) In this case there was no evidence that the danger of an assault or personal injury was peculiar to the work of McDonough or incidental to the business of delivering milk or selling milk and butter to cash customers. There was evidence that there had been no trouble between McDonough and any other person, and perhaps any inference that his death was the result of a personal difficulty would not be justified. The sister gave the deceased a leather pouch when he left home. There was a pocket-book containing money left in the pocket of the deceased, and if it was a different one from the leather pouch there would be a serious question whether the purpose of the assault was robbery. There was ordinarily an electric light at the place where the homicide occurred, but it was not burning at the time and the place afforded a good opportunity for robbery. If there was a robbery and the only purpose was to obtain money, it would, of course, be entirely immaterial that the money might be used by the deceased in making change upon cash sales. There was no evidence from which an inference could arise that a robbery, if there was one, was because of the employment, or that the death of McDonough had its origin in any risk connected with the employment or arising out of the relation between him and his employer. The cause of the homicide is a mystery and any conclusion would rest upon mere conjecture.

The evidence not being sufficient to lead to a conclusion that the killing of McDonough was in any way connected with his employment, the judgment of the circuit court must be affirmed.