(No. 15866.—Judgment reversed.)

The W. A. Jones Foundry and Machine Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Gust Borgstrom, Defendant in Error.)

*Opinion filed April 14, 1924.*

1. Workmen's compensation—*accidental injury must arise out of employment.* The Compensation act does not provide compensation for every accidental injury which may happen to an employee during his employment, but the injury contemplated by the act must also arise out of the employment or have its origin in some risk of the employment.

2. Same—*when killing of employee does not arise out of employment.* The death of an employee is not the result of an accident arising out of his employment where the proof shows that he was shot and killed by a lunatic who came into the office where the employee was working and began shooting at everyone there because he had been discharged by the company and had had a dispute as to the amount of wages due him.

Writ of Error to the Circuit Court of Cook county; the Hon. Harry M. Fisher, Judge, presiding.

Gallagher, Kohlsaat, Rinaker & Wilkinson, for plaintiff in error.

Beckman, Olson & Hough, for defendant in error.

Mr. Chief Justice Farmer delivered the opinion of the court:

This writ of error was allowed by this court to review a judgment of the circuit court of Cook county confirming an award under the Workmen's Compensation act in favor of Gust Borgstrom, father of Chester Borgstrom, deceased, on the ground that the death of Chester resulted from an accidental injury arising out of and in the course of his employment, and that the father of Chester was dependent, or partially dependent, upon him.

The facts not in dispute are, that Chester Borgstrom was shot and killed at his place of employment in plaintiff

in error's plant April 5, 1922, by Charles S. Salfeld. Borgstrom was a draftsman for plaintiff in error, and had been so employed for about four years. He was a single man, living with his parents. Salfeld had some time previously also been employed by plaintiff in error but had left its employment some three months before the killing. While Salfeld was employed by plaintiff in error he and Borgstrom did not work together and neither party had any supervision over the other. Salfeld had designed some kind of a gas engine, and desired a piece of timber 6 inches thick, 24 inches wide and 12 feet long to place his engine on. The plaintiff in error had been in the habit of buying things for its employees, paying for the same and charging the cost price to the employees. An employee of plaintiff in error named Maiworm was its purchasing agent, and Salfeld requested him to secure the stick of timber. Maiworm agreed to do so but told Salfeld the timber of the dimensions he wanted was not a stock size, and he would have to get one 12 inches thick, 24 inches wide and 12 feet long and have it ripped in the middle. Maiworm bought the timber from the Hines Lumber Company at a cost of $28.80, and when the bill was rendered Salfeld disputed its correctness and refused to pay it. Shortly thereafter he was discharged from the plaintiff in error's employment after having been given a month's notice and was allowed two weeks' additional pay, but plaintiff in error deducted the $28.80 from the amount due him. Salfeld accepted the check given him by plaintiff in error but the next morning returned and declined to accept it because the $28.80 was deducted. He then sued plaintiff in error in the municipal court for the full amount of his wages, but the court decided he was only entitled to the amount tendered him, $163. Salfeld became angered at Maiworm and Sizer, the secretary of plaintiff in error, and made some threats, accusing them of perjury. On the 5th of April, 1922, Salfeld went to the office of plaintiff in error, walked up to the desk of Sizer

and threw a document on his desk, which started out with, "Read this if you want to live." It is of some length, indicates a deranged mind, and told Sizer to read it three times, and if he showed any sign of excitement he would be instantly killed. Sizer did not read the document but undertook to talk with Salfeld and finally grabbed for him, when Salfeld fell over backwards, and as he did so fired two shots from guns in his pockets, one of which struck Sizer in the leg. Sizer ran out of the office with Salfeld still firing until he had fired several shots, after which he went out on the sidewalk. He returned very shortly to the office and began shooting again. A number of employees took refuge in a vault, among them Borgstrom. They endeavored to throw the combination lock from the inside but were unable to do so, and Salfeld pulled the vault door open, fired into the vault and killed Borgstrom and wounded Hoge, chief draftsman for the plaintiff in error. He then stopped shooting to re-load his guns, and Powers, an employee of plaintiff in error, secured a revolver in the coat-room and fired two shots at Salfeld, who dropped to the floor and died very quickly. The gun used by Powers was a Smith & Wesson .38. Both guns used by Salfeld were 25-calibre, and examination showed he was killed by a bullet of that calibre, from which it may be inferred he committed suicide. At the trial in the municipal court the judge directed plaintiff in error to locate the half of the piece of timber not used by Salfeld and advise Salfeld where it was, which plaintiff in error did.

Plaintiff in error insists the death of Borgstrom did not arise out of his employment and the award was not authorized by the statute. The Compensation act requires the employer to pay compensation to employees who sustain accidental injuries which arise out of and in the course of the employment. Under the statute the accidental injury must not only occur during the employment but must arise out of it. In *United Disposal Co.* v. *Industrial Com.*

291 Ill. 480, the court said: "An accident arises out of the employment when it is something the risk of which might have been contemplated by a reasonable person when entering the employment, as incidental to it. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service." In *Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459, the court said: "If the injury can be seen to have been a natural incident of the work and to have been contemplated by a reasonable person as a result of the exposure occasioned by the nature of the employment, it may be said to arise out of the employment. An injury not fairly traceable to the employment as the contributing proximate cause and which comes from a hazard to which the employee would have been equally exposed apart from the employment does not arise out of the employment. The causative danger must be peculiar to the work and incidental to the character of the business." Those decisions are supported by *City of Chicago* v. *Industrial Com.* 292 Ill. 406, *Jersey Ice Cream Co.* v. *Industrial Com.* 309 id.; 187; *Alzina Construction Co.* v. *Industrial Com.* id. 395, and *Boorde* v. *Industrial Com.* 310 id. 62. In the case last cited the court said: "Whether the accident occurred in the course of her employment is not material unless it also arose out of her employment, had its origin in her employment and was the result of some risk attendant upon her employment which it can now be seen might have been reasonably contemplated as incidental to it. (*Weis Paper Mill Co.* v. *Industrial Com.* 293 Ill. 284.) The Workmen's Compensation act does not apply to every accidental injury which may happen to an employee during his employment. It does not make the employer an insurer against all injuries. The injury contemplated by that act must have had its origin in some risk of the employment.—*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459." The facts and circumstances of the killing of Borgstrom by Salfeld above stated need no

further argument to show that the death was not the result of an accident arising out of his employment. We cannot stretch the law to embrace a case clearly not within the contemplation of the statute.

The judgment of the circuit court is reversed and the award set aside.

*Judgment reversed.*