(No. 20536.—

MARY VANWATERMEULLEN, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE J. L. WELLS COMPANY, Plaintiff in Error.

*Opinion filed February 18, 1931.*

JOHN BLOOMINGSTON, and HUBER & REIDY, for plaintiff in error.

WOOD & WARNER, and P. J. MEERSMAN, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

This case is here on writ of error to review a judgment of the circuit court of Rock Island county awarding workmen's compensation in weekly payments aggregating $4350 to Mary VanWatermeullen on account of the death of her husband while allegedly employed by plaintiff in error, herein called defendant. The principal issues relied upon to reverse the decree can be summarized under two headings: (1) That the accident did not arise out of the employment; and (2) that the relation of employer and employee did not exist because deceased was an independent contractor.

Peter VanWatermeullen, deceased, lived with his wife and two minor children in Moline and was the owner of a Ford truck, engaged in the business of general trucking of coal and other materials when and wherever he could secure work to do. He was twenty-six years of age and had been engaged in the general trucking business for at least four years prior to his death. On July 9, 1926, in search of work in his line of business, he went to Prophetstown, Illinois, where defendant was constructing a concrete road for the State. After removing the cab from his truck, leaving a straight board seat without end pieces, he began work for defendant on the morning of July 10 hauling loads of sand, gravel and cement about two miles from the railroad in Prophetstown to a concrete mixer operated by defendant in its road construction work. A portion of the distance was through a field, where the road was rutty and rough. A large number of trucks were hauling at the same place and he took his turn with the rest until noon. He then went to dinner, ate a heavy meal and returned immediately to his work. The sun was shining and the day was very hot. After dinner he hauled at least one load, and while at the mixer he stalled his engine. He waited for a laborer to crank his engine, and after the laborer had given up starting it he got off and put in considerable time cranking it, finally getting it started again.

He then returned to the loader at Prophetstown, took on another load and started toward the mixer. He had proceeded but a short distance when he was seen to rise up and fall off the end of the seat. He struck the cinder road-bed on his head and shoulder, was picked up unconscious and remained in that condition. A doctor was called and arrived at the place of the accident a few minutes later. He found the deceased in a state of shock, covered with a cold, clammy sweat, with some abrasions on the side of his face and head. The doctor testified that there was no indication of paralysis. He moaned and moved his arms and legs. He was first taken to his boarding house, and in about an hour was removed by ambulance to a hospital in Moline. He remained unconscious, and that evening an explorative operation was performed on the right side of his cranium for the purpose of relieving the pressure on his brain, but no hemorrhage was discovered. The next morning the patient died. A post-mortem examination was held by several surgeons, and when they opened his cranium on the left side they found a ruptured vein in the left lateral sinus, with much clotted blood. The post-mortem examination showed the tissue of the ruptured vein to be in a sound, healthy condition and no evidence of any disease or inflammation was found. Four surgeons who testified in answer to a hypothetical question which stated the facts as shown by the evidence, gave it as their opinion that the vein was ruptured by the fall and that death was due to the rupture. On cross-examination one doctor was of the opinion that deceased had probably fainted on account of the exposure to the sun after a full meal, not being used to hard work; another said his fall might have been caused by a sunstroke; the third thought his falling might have been caused by sickness, while a fourth attributed his falling to an accident of some sort, but all agreed that his death was due to the hemorrhage in his brain, caused by his falling off the truck. The record shows that prior to the ac-

cident the deceased had been a rugged, healthy man, capable of doing strenuous work. He had never laid off from work at any time on account of sickness.

At the time of the accident defendant was engaged in the construction of a concrete road. For the work deceased was doing at the time of his injury he was receiving thirty cents a mile for a load, and during the part of the day that he had worked he hauled eight loads and earned $4.80. The men with whom he worked and who were doing the same kind of trucking earned from $12 to $15 per day during the season.

From a review of the evidence we are satisfied that when deceased fell from the truck to the ground he sustained an accidental injury to his head which caused his death, and that such accident arose out of and in the course of his employment. There is no proof here that he ever before had suffered from any disease, sunstroke or seizure of any kind, and the autopsy showed no arterial hemorrhage, such as results from high blood pressure, but showed a ruptured vein, which, when surrounded by healthy tissues, could only have resulted from a heavy blow or impact. His fall from the truck was thus the immediate cause of his death. It is needless for us to indulge in conjecture as to the cause of the fall, whether due to sunstroke, overeating or fainting spell, as the cause of the injury was the fall itself, which occurred while deceased was normally engaged in his work driving a loaded truck to its proper destination. This court has repeatedly held that an injury is accidental within the meaning of the Compensation act which occurs in the course of employment unexpectedly and without any affirmative act or design of the employee. (*Vulcan Detinning Co.* v. *Industrial Com.* 295 Ill. 141; *Jones Foundry and Machine Co.* v. *Industrial Com.* 303 id. 410; *Western Shade Cloth Co.* v. *Industrial Com.* 308 id. 554.) A break in an artery is an accident under the Compensation act, (*Baggot Co.* v. *Industrial Com.* 290 Ill. 530,) likewise a heat stroke. (*City*

*of Joliet* v. *Industrial Com.* 291 Ill. 555.) Where an employee having a physical seizure sustains injuries or falls from an unknown cause and sustains injuries which ordinarily would not have been sustained but for the employment or conditions of employment, such injuries arise out of the employment and are compensable. *Rockford Hotel Co.* v. *Industrial Com.* 300 Ill. 87; *Peoria Railway Terminal Co.* v. *Industrial Board,* 279 id. 352; *Vulcan Detinning Co.* v. *Industrial Com. supra.*

In support of its second contention defendant claims that there is a lack of proof that the relationship of employer and employee existed, and attempts to establish that the deceased was an independent contractor. One of the principal factors which determine whether a worker is an employee or an independent worker is the matter of the right to control the manner of doing the work—not the actual exercise of that right. (*Cinofsky* v. *Industrial Com.* 290 Ill. 521.) The length of time deceased had been employed is immaterial. (*Field & Co.* v. *Industrial Com.* 285 Ill. 333.) The work may be such that very little supervision is necessary. The fact that payment is made by the piece or job is not necessarily controlling. (*Franklin Coal Co.* v. *Industrial Com.* 296 Ill. 329.) If the employer directs where to unload and how the unloading is to be done and retains the right to discharge the employee the relationship of employer and employee is established. (*Decatur Railway and Light Co.* v. *Industrial Board,* 276 Ill. 472.) The evidence here shows that the deceased and other truck drivers doing the same work furnished their own trucks and worked for the defendant at thirty cents per load per mile, or sixty cents for hauling a load two miles. They had to keep moving to hold their jobs, and other men loaded their trucks at the railroad and dumped them at the mixer. It appears that the employer controlled the loading of the truck, the destination of the load, the dumping of the load, the kind and quantity of material hauled, the distance traveled

78

by the truck, the amount of pay received for the load and the right to discharge the employee, and through the ownership and operation of the machinery which loaded the truck and the machinery for the disposition of the material hauled, the employer controlled the hours of the trucker's employment. The employee was thus subject to his employer's control as to terms, kind, results and duration of employment sufficient to establish the relationship of employer and employee.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*