(No. 26212.—
The Northwestern Yeast Company, Plaintiff in Error,
*vs.* The Industrial Commission *et al.*—(Ida Larson,
Defendant in Error.)

*Opinion filed November 18, 1941.*

196

ANGERSTEIN & ANGERSTEIN, for plaintiff in error.

J. S. COOK, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

A writ of error was allowed to review the judgment of the circuit court of Cook county affirming an award entered by the Industrial Commission in favor of defendant in error, mother of deceased, Bertil O. Larson. Larson was an employee of plaintiff in error and on July 13, 1939, at about 6:43 A. M. was found lying in an alleyway about fifteen feet south of the south wall of one of the buildings of plaintiff in error's plant used for the manufacture of yeast. The building was known as building "C." He was taken to a hospital and died a short time thereafter. No question of fact is involved in the case as there has been no dispute in the evidence. The question presented here therefore is one of law, as to whether the facts support the award. *Mt. Olive & Staunton Coal Co.* v. *Industrial Com.*

374 Ill. 461; *Scott* v. *Industrial Com.* id. 225; *Scholl* v. *Industrial Com.* 366 Ill. 588; *Ervin* v. *Industrial Com.* 364 id. 56.

The facts are that on the morning of July 13, 1939, Larson was seen to enter building "C" at 6:30. He was not seen again until found in the alley. One of the windows on the seventh floor of building "C," directly over where his body lay, was open, and on an aisle or hallway running along the south wall, on that floor, was found a package of lunch wrapped in a newspaper. The record does not show to whom the lunch belonged but counsel assume that it belonged to Larson. There were no marks on the windowsill to indicate the passing of a body through the window and no one was seen or known to be on the seventh floor at that time. It also appears from the evidence that plaintiff in error, in its business of manufacturing yeast, has four buildings more or less united. Three of them, including building "C," are seven stories in height. The plant at that time was working overtime, the men starting at 7:00 o'clock A. M. instead of the customary time of 8:00 o'clock.

It appears from the testimony of the witness Daniels, an employee of plaintiff in error, that his duties were to check the windows on the seventh floor of building "C" every hour to see that the proper temperature was maintained on that floor for the drying of yeast cakes which were brought there by trucks and arranged on that floor in trays; that it was required that the temperature be kept at about 92 degrees, and in order to so regulate it the business of the witness was to see that all the windows on that floor were closed at the bottom and opened somewhat at the top. He testified that on the morning of July 13 he made his last round of inspection at 6:05, checking the windows on the seventh floor of building "C," and found them all closed at the bottom. At that time the elevator in building "C" was not on the seventh floor. After de-

ceased was found in the alleyway this witness went to the seventh floor and found the window on that floor, directly above where deceased lay, open at the bottom, with both upper and lower sashes raised to the top. He also found that the elevator had been brought up to that floor, though no one was working on that floor at the time.

It was the practice of the employees to come to the second floor of building "C" and punch the time clock which stood on the stairway landing on that floor. A rule was in force prohibiting workmen punching the clock more than fifteen minutes before time to start to work. After punching the clock the employees went to the locker rooms on the third floor of building "C" and changed from their street clothes to those they wore while working. No one saw deceased doing anything between the time he was seen to enter the plant at 6:30 and when he was found lying in the alleyway. He had not punched the clock and had not changed his clothes but was still in his street clothes.

The evidence showed that the sill of the open window on the seventh floor of this building was 34 inches above the floor and that the width of the sill to the outside of the wall was 14½ inches. The window was 53½ inches wide, and when the bottom window sash was raised as far as it would go the bottom of that sash was 74 inches from the floor. The aisle or passageway alongside the window on that floor was wide and the floor was smooth. There were no objects in the passageway.

The evidence also is that the duties of the deceased were changed from time to time; that on July 12 he worked on a yeast press in another building and wheeled trucks of yeast to the elevator in building "C," to be taken to the seventh floor. The last instructions given him by the acting foreman were on the night of July 11, when he was told to operate the presses in building "N," and that he had no different duties to perform on July 13. The evidence is that he had no business on the seventh floor of building "C"

on the morning of July 13. Nothing in connection with his operation of the presses required his going to that floor of building "C," and no trucking of the yeast could take place until after the yeast had been pressed, which the evidence shows was not finished before 9:30 or 10:00 o'clock each morning. The deceased was twenty-five years old, approximately 5 feet 10 inches in height and weighed approximately 175 pounds.

The errors assigned present the questions whether defendant in error has established that the death of deceased was due to an accidental injury and if so whether such injury arose out of and in the course of the employment of the deceased. Also the amount of the award is questioned. The burden of proving that Larson's death was due to an accidental injury which arose out of and in the course of his employment, was upon the defendant in error. (*Byram* v. *Industrial Com.* 333 Ill. 152; *Atlas Brewing Co.* v. *Industrial Com.* 314 id. 196; *United States Fuel Co.* v. *Industrial Com.* 310 id. 85; *Wisconsin Steel Co.* v. *Industrial Com.* 288 id. 206.) Defendant in error's counsel argue that a finding of fact by the Industrial Commission may be based upon circumstantial evidence from which a reasonable inference supporting the finding may be deduced, though there be no eyewitnesses. That rule has been announced in numerous cases. *Banner Tailoring Co.* v. *Industrial Com.* 354 Ill. 513; *Vulcan Detinning Co.* v. *Industrial Com.* 295 id. 141; *Sparks Milling Co.* v. *Industrial Com.* 293 id. 350.

While the Workmen's Compensation act provides a different method of procedure for obtaining redress for personal injuries than that obtaining before its enactment, it does not change the rules of evidence nor the burden of proof. (*Chicago Daily News Co.* v. *Industrial Com.* 306 Ill. 212.) It is necessary to a recovery of compensation that the claimant prove by a preponderance of competent evidence that the injury arose both out of and in the course

of the employment. This must be shown either by direct or circumstantial evidence by which the fact may reasonably be said to exist. Liability under the Workmen's Compensation act cannot rest upon imagination, speculation or conjecture, nor upon a choice between two views equally compatible with the evidence, but must be based upon facts established by a preponderance of the evidence. (*United States Fuel Co.* v. *Industrial Com. supra; Camp Spring Mill Co.* v. *Industrial Com.* 302 Ill. 136; *Savoy Hotel Co.* v. *Industrial Board,* 279 id. 329.) It has long been established in this State that an accident, to be compensable, must be one resulting from a risk reasonably incidental to the employment,—that is, a risk which belongs to or is connected with what a workman has to do in fulfilling his contract of service. If the workman incurs an injury due to a risk not incident to his employment but through doing an act of his own choosing outside any reasonable exercise of employment, such injury does not arise out of his employment. *Boorde* v. *Industrial Com.* 310 Ill. 62; *United Disposal Co.* v. *Industrial Com.* 291 id. 480; *Mueller Construction Co.* v. *Industrial Board,* 283 id. 148.

In this case, if Larson went to the seventh floor of building "C" before the time of his employment had arrived, and where he had no business to be at the time, and opened a window contrary to the rules of his employer, he was engaging in a voluntary act not known to his employer and one outside the duties for which he was employed; and if his death was caused by falling out of the window on that floor while in the act of raising the window, it cannot be said that his injury arose out of his employment.

It is clear from the evidence that in going to the seventh floor, if he did go, he went to a place where his employment did not carry him; and, in opening a window, if he did, whereby his fall was occasioned, he incurred a danger, if any attended such act, quite outside any risk of his em-

ployment. In short, he was doing something that he was not only not required to do but had no business doing. Cases cited by counsel for the defendant in error are those in which the injured employee was doing something which was not strictly within the scope of the employment at the time of the injury, but which the record showed it was the custom of employees to do, with the knowledge of the employer, as in *Stephens Engineering Co.* v. *Industrial Com.* 290 Ill. 88, where the record showed that the employees were in the habit of using a fire escape as a means of descent from the bin room; or, where, as in *Wabash Railway Co.* v. *Industrial Com.* 294 Ill. 119, the injured employee was in the habit of taking a certain train from the place of his employment, and like cases.

Those cases are to be distinguished from the case before us for the reason that there is nothing in the circumstances shown in this record that tends to indicate that at the time of Larson's death he was engaged in doing anything that was connected with the work for which he was employed, but on the other hand shows he was in a place where he was not expected to be, and if he opened the window he was doing that which he was not permitted to do and as to which he had no right to exercise discretion. As we have stated, there was no eyewitness to his death. That he went to the seventh floor of building "C" and opened the window above where he was found lying in the alley, and fell out of it, either accidentally or with suicidal intent, can only be determined by inferences from the fact that the elevator was not on the seventh floor and the window on that floor was closed at 6:05 A. M. and, immediately after he was found unconscious, investigation disclosed that the elevator was at the seventh floor and the window was open. His instructions for work that day would take him to an entirely different building after he had punched the time clock and changed his clothes. He had no business on the seventh floor.

Counsel for defendant in error argue that the presumption against suicide is sufficient to form the basis for a finding of accidental injury. The rule is that where the evidence shows the deceased to have been in good health and there is complete absence of evidence showing suicide, it must be presumed that the death was accidental. (*Wilkinson* v. *Aetna Ins. Co.* 240 Ill. 205; *Sparks Milling Co.* v. *Industrial Com. supra.*) However, such presumption does not change the burden resting upon the claimant to establish that the death was accidental. There is a presumption that all men are sane and possessed of love of life and the natural desire to avoid personal injury and death, and in the absence of countervailing proof this presumption may be sufficient, within itself, to establish *prima facie* that death occurred other than by suicide. But the presumption is not one of law but one of disputable fact and does not relieve the claimant from the burden of affirmatively showing that the death of the deceased arose out of his employment and was not suicide. *Atlas Brewing Co.* v. *Industrial Com. supra.*

In this case, though it be conceded that the death of Larson occurred in the course of his employment, there is no evidence whatever to establish that it arose out of any risk incident to his employment. Whether he opened the window and fell from it, or jumped from it, will never be known. While his unexplained death was unfortunate in the extreme, and most regrettable, it is impossible to say from the evidence that it arose out of his employment. The finding of the Industrial Commission was, therefore, erroneous, and the circuit court erred in affirming that finding.

The judgment of the circuit court is reversed and the award set aside.

*Judgment reversed; award set aside.*