(No. 29297.—

CHICAGO HARDWARE FOUNDRY Co., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PETER DOMALIK, Plaintiff in Error.)

*Opinion filed March 20, 1946*

· George S. McGaughey, of Waukegan, and Peregrine & Bruegger, of Chicago, for plaintiff in error.

Angerstein & Angerstein, of Chicago, and Hall & Hulse, of Waukegan, (Thomas C. Angerstein, George W. Angerstein, Walter E. Hassmann, Wendall H. Shanner, and Charles Wolff, all of Chicago, of counsel,) for defendant in error.

Mr. Justice Fulton delivered the opinion of the court:

This cause is here on writ of error allowed to review the judgment of the circuit court of Lake county setting

aside an award of the Industrial Commission entered on the application of Peter Domalik, plaintiff in error, and against Chicago Hardware Foundry Co., defendant in error, on account of injuries sustained on August 30, 1942.

In his application for adjustment of claim filed with the Industrial Commission, immediately following the printed words, "Nature of work upon which injured was engaged at time of accident and how caused," was petitioner's type-written allegation: "leaning over bannister reading gauges in boiler room in the course of his duties as fireman was pushed by some person unknown."

The arbitrator entered a finding that plaintiff in error had "failed to prove that he sustained an accidental injury arising out of and in the course of his employment."

Plaintiff in error filed a petition for review before the Industrial Commission, and, at the hearing thereon, no further evidence of any nature was introduced as to how the accident occurred, but the Industrial Commission reversed the finding of the arbitrator and awarded compensation to plaintiff in error on account of injuries to his left arm, for temporary total incapacity and for the permanent and complete loss of forty per cent of the use of said arm.

On *certiorari* proceedings the circuit court of Lake county entered an order reversing the decision of the Industrial Commission and, among other things, found that the facts are undisputed and that the sole question presented,—whether on the admitted and undisputed facts the injury for which compensation is claimed arose out of the petitioner's employment,—is one of law; that there is no evidence in the record to sustain the Industrial Commission's finding that petitioner's injuries arose out of his employment; that there is no evidence in the record from which it logically and justifiably can be found that petitioner's injuries resulted from or were traceable to any natural incident or risk of petitioner's employment, or that there was any causal connection between such injuries and

petitioner's employment. All the issues were stipulated by the parties before the Industrial Commission, with the single exception as to whether the accidental injury for which compensation is claimed arose out of and in the course of plaintiff in error's employment. The only evidence in the record as to the occurrence of the accident and as to the attendant circumstances is the testimony of the plaintiff in error himself, from which it appears that on August 30, 1942, plaintiff in error, who was then twenty-five years of age, was in the employment of defendant in error at its plant located on Commonwealth avenue, North Chicago, Illinois. His hours of work were from four o'clock in the afternoon until twelve o'clock midnight. His duties were those of a fireman and boiler tender and his work took him all over the building. The boiler room was about 25 or 30 feet long and a little more than 15 or 20 feet wide. There were two boilers in the boiler room and a coalbin directly in front of the boilers. There were about 10 or 15 feet of space between the coalbin and the boilers. Directly in front of the right-hand boiler there was a steel stairway running up to a platform which extended across the front of both boilers. This stairway, which plaintiff in error had to use from time to time in the performance of his duties, was protected on either side by a railing, and there also was a railing along the outer or exposed side of the platform. Plaintiff in error testified that, in his opinion, the distance from the concrete floor to the top of the stairs was about 4 or 5 feet. At another point in his testimony he estimated the height from the bottom of the stairway to the platform at about 7 feet, but the slant of the stairway would make it about 10 feet from the head down to the concrete floor.

Coming from the outside there were five doors in defendant in error's plant which had to be gone through to get into the boiler room. Leaving the office, there was a storage room and from this room a door led to the out-

side and then from this open space a door led into the engine room. From the engine room there were two doors leading into the boiler room.

On the above date plaintiff in error had punched in at the time clock at about five minutes before four o'clock P.M. Although the day was Sunday, there were a few departments in the plant working. After punching in he went directly to the boiler room. There was no one else in the boiler room except the man whom Domalik relieved, one Stanley Kalinowski. Domalik first filled up the coal hoppers; he then pumped water into the boilers, and later at about five o'clock he went into the engine room and read the electric meters. After reading the meters, Domalik walked out from the engine room through a door which opened out onto the platform above described to read the boiler and water gauges. The platform was on the same level with the floor of the engine room. While looking at the gauges, Domalik stood at the head of the stairs with his right hand on the railing facing downstairs. About two feet behind him was the open door which led from the engine room out onto the platform. He had been standing in this position for about five minutes when he heard footsteps back of him and he was suddenly and violently pushed headfirst down the stairs, sustaining the injuries for which he later made claim for compensation. He testified, "All of a sudden I was pushed by someone." The time of the accident, as fixed by plaintiff in error, was about ten minutes past five o'clock P.M. Domalik was asked the question: "And you say you were pushed?" and answered, "Yes;" and later he was asked, "And they pushed you forward, did they?" and he answered, "Certainly; they pushed me forward." And on his direct examination he testified, "I came back after pumping and started to read my boiler gauges at the time and I also watched my water gauge so that it wouldn't pump all the water out so I had looked over at the water from the re-

serve tank and I turned around and I didn't see anybody, and there was nothing out of the usual, and I went and took a drink of water. I didn't pay any attention to anything and all of a sudden I was pushed by someone. I didn't see anybody but I was pushed and I noticed that I was flying down the stairs on the cement down below and I hit my head and I was knocked out. I did get on my feet and I went to see if I could see anybody. I didn't see anyone at all, so I went down to the office and I told Mr. DeCelle about it." DeCelle was the defendant in error's production manager. Domalik further testified that he told DeCelle as follows: "Well, I told him someone pushed me, and I think I said, 'I think it was the man I relieved, Stanley Kalinowski'." Kalinowski was a cousin of Domalik's wife, and it appears Domalik had been having trouble with his wife for ten days or more previous to the date of the accident and that at the time of the accident divorce proceedings were pending against his wife and he had obtained an injunction to keep her out of his house and giving him custody of their baby, and a divorce was granted him on November 18, 1942. He also testified that his wife had made threats against him shortly before the accident and that he had told Mr. Simonson, chief engineer of the defendant in error, about Kalinowski being related to his wife and the trouble that plaintiff in error was having, and that he thought Kalinowski had pushed him down the stairs. Plaintiff in error testified he had had no argument with Kalinowski about the trouble between plaintiff in error and his wife, and there is no evidence in the record that Domalik and Kalinowski had any argument over their work at the plant or any matter in regard to their employment at any time, and particularly none on the afternoon in question when Domalik punched in for work and Kalinowski left, nor is there any evidence in the record tending to show that the assault upon him was in any way related to or grew out of his employment. No definite information was

ever gotten as to the identity of Domalik's assailant. There is no doubt, however, from Domalik's testimony that he thought Kalinowski was the person who pushed him down the stairs, because he answered, "I said I think he is the fellow that did it because he was the only man what was there." Kalinowski himself, on the hearing on review before the Industrial Commission, testified on behalf of Domalik that he had not pushed plaintiff in error down the stairs and that he had left the plant on that day before the injury occurred at about 4:02 o'clock.

That plaintiff in error must have been assaulted with considerable violence is shown by his testimony that when he was pushed all of a sudden by someone he "was flying down the stairs," and that from the point where he stood to the point where he landed on the concrete floor it was about ten feet, and as he "was flying down the stairs" he tried to get hold of himself on the fifth step, but he couldn't. Moreover, the suddenness and violence with which he was pushed down the stairs is further shown by the nature and severity of his injuries sustained as a result of the impact of his head and body upon the cement floor of the boiler room.

DeCelle testified that he was at the plant about 5:30 P.M. on the day of the accident when Domalik came to his room and told him "they beat up on him and threw him down the stairs, and that he got socked on the jaw." Plaintiff in error denied that he told DeCelle that he was socked on the jaw, but admitted that he did tell him that he "thought this cousin of my wife was the fellow who did it because he was the only man what was there." However, on his redirect examination, he said he didn't know whether Kalinowski left the plant or not.

Since the facts are not in controversy, the decisive issue as to whether the injury sustained by plaintiff in error arose out of his employment is a question of law as to whether the facts support the award. (*Illinois Country*

*Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *Farley* v. *Industrial Com.* 378 Ill. 234; *Northwestern Yeast Co.* v. *Industrial Com.* 378 Ill. 195; *Ervin* v. *Industrial Com.* 364 Ill. 56.) We said in the last case cited: "It would scarcely be contended that any question of law decided by the Industrial Commission is binding upon this court."

The Workmen's Compensation Act requires that an accidental injury, to be compensable, must arise out of and in the course of the employment. These phrases are used conjunctively in the statute. (*Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *Farley* v. *Industrial Com.* 378 Ill. 234; *Great American Indemnity Co.* v. *Industrial Com.* 367 Ill. 241; *Borgeson* v. *Industrial Com.* 368 Ill. 188.) Both elements must be present at the time of the injury, in order to justify compensation. *Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *Mazursky* v. *Industrial Com.* 364 Ill. 445.

We have repeatedly held that the employer is not an insurer of the safety of its employees at all times during the period of the employment. *Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *Mt. Olive & Staunton Coal Co.* v. *Industrial Com.* 374 Ill. 461; *Boorde* v. *Industrial Com.* 310 Ill. 62.

There must be a causal connection between the conditions existing on the employer's premises and the injury to the employee, and the accident must have had its origin in some risk connected with or incidental to the employment. (*Cummings* v. *Industrial Com.* 389 Ill. 356; *Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *Borgeson* v. *Industrial Com.* 368 Ill. 188.) We said in the *Country Club case:* "An injury may be said to arise out of the employment when, upon consideration of all the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the resulting injury. The mere fact that an employee was present at the place

of injury because of his employment will not suffice unless the injury itself is a result of some risk of the employment. * * * Conversely, if an injury is caused by reason of some factor unrelated to the nature of the employment, it cannot be said to arise out of the employment, and an injury which cannot fairly be traced to the employment as a contributing, proximate cause and which comes from a hazard to which the employee would have been equally exposed apart from the employment, does not arise out of the employment, as the causative danger must be peculiar to the work and not common to the neighborhood and the public." *Spiller* v. *Industrial Com.* 331 Ill. 401; *Gooch* v. *Industrial Com.* 322 Ill. 586.

The burden devolves upon an applicant for compensation under the act to establish by a preponderance of competent evidence all of the essential elements of his right to compensation. *Western Cartridge Co.* v. *Industrial Com.* 383 Ill. 231; *Northwestern Yeast Co.* v. *Industrial Com.* 378 Ill. 195; *Borgeson* v. *Industrial Com.* 368 Ill. 188.

It has been often said by this court that liability under the Workmen's Compensation Act cannot rest upon imagination, speculation or conjecture, or upon a choice between two views equally compatible with the evidence, but such liability must arise out of facts established by a preponderance of the evidence. *Nelson* v. *Industrial Com.* 346 Ill. 82; *American Smelting and Refining Co.* v. *Industrial Com.* 353 Ill. 324; *Mirific Products Co.* v. *Industrial Com.* 356 Ill. 645.

The cases cited by plaintiff in error in his petition in support of the first of his "alternative" contentions, that compensation is payable where an employee falls from any cause, whether connected with the employment or not, and sustains injuries which ordinarily would not have been sustained but for the employment or conditions of employment, are not applicable to the facts in this case, as they all have to do with falls from idiopathic causes.

In *Wilkes* v. *Dowell & Co.* (1905) 21 T.L.R. 487, the employee fell into the hold of a ship and the fall was caused by the idiopathic condition of the man himself. In *Peoria Railway Terminal Co.* v. *Industrial Board,* 279 Ill. 352, the employee fell from the cab of a moving engine and died without regaining consciousness. There were no witnesses to the fall, and the autopsy showed he had a pre-existing disease which predisposed him to the hemorrhage of the brain and the ruptured blood vessel which the attending physician thought caused his death. There were conflicting medical opinions and compensation was allowed on the theory that where a workman dies from a pre-existing disease which is aggravated or accelerated under circumstances which can be said to be accidental, the death may be said to have resulted from an accidental injury.

In *Vulcan Detinning Co.* v. *Industrial Com.* 295 Ill. 141, the employee was found dead in an open trench of a toilet furnished on the premises for the use of the employees. There were no witnesses. The cause of the fall was unknown, and it was held, even though the fall were occasioned by heart trouble or another chronic disease, the case was still compensable.

In *Rockford Hotel Co.* v. *Industrial Com.* 300 Ill. 87, the employee fell into an ashpit and was burned by hot cinders. There were no witnesses to the fall, and it was contended that the deceased's fall was caused by his being seized with an epileptic fit and this court said that a majority of the courts, American and English, hold that if the injury was due to the fall the employer is liable even though the fall was caused by a pre-existing idiopathic condition.

In *VanWatermeullen* v. *Industrial Com.* 343 Ill. 73, a truck driver fell from the seat on the truck to the ground below. There was conflicting medical testimony but the physicians all agreed that his death was due to a hemorrhage in his brain caused by falling off the truck, and

we held: "Where an employee having a physical seizure sustains injuries or falls from an unknown cause and sustains injuries which ordinarily would not have been sustained but for the employment or conditions of employment, such injuries arise out of the employment and are compensable."

It is to be noted that in none of these cases cited was the employee later able to tell the cause of the fall and in all of them there were conflicting medical opinions and theories from which a reasonable inference could be drawn, whereas, in the instant case, the facts, as established by the undisputed testimony of the claimant himself, are that his fall was caused by his being pushed by some person unknown and from an unknown motive, and there is no causal relation between such assault and the plaintiff in error's employment. Moreover, there are no "evidentiary conflicts" or questions of "credibility" of the witnesses, as contended by plaintiff in error in his petition.

Plaintiff in error, under the second of his "alternative" contentions, cites the cases of *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96; *Combes* v. *Industrial Com.* 352 Ill. 399; *Rosenfield* v. *Industrial Com.* 374 Ill. 176, in addition to the *Peoria Terminal Co. case,* and *Vulcan Detinning Co. case,* above cited. In the *Ohio Building Safety Vault Co. case* the deceased employee was a night watchman in an office building, and there were no witnesses to the assault upon him. In that case this court said: "It is a matter of common knowledge that in office buildings, mercantile establishments and other large building in great cities, such as Chicago, night watchmen are employed. One of their most important duties is that of guarding the premises from trespassers, thieves or night prowlers. Many such persons are known to be desperate, and employees whose duties expose them to contact with them must necessarily incur the danger of being assaulted by them. * * * The danger of this injury was peculiar

to his line of work and not common with all other kinds of employment. We are not intending to hold that any assault on an employee while in the discharge of his duties arises out of his employment. Such an assault only arises out of his employment in a case where the duties of the employee are such as are likely to cause him to have to deal with persons who in the nature of things are liable to attack him."

In the *Combes case,* the employee was a janitor who was shot by a trespasser and a disorderly person whom it was his business to keep out of the building. We reviewed in our opinion numerous assault cases and held that "Here the defendant in error was on duty twenty-four hours a day; he had charge of the building; robberies had been committed previously on the premises; when he was employed he was asked if he had a gun and stated that he had; he carried the revolver; he was instructed to call the police, \* \* \* and if he saw any strangers around, or anything which did not 'look presentable,' he was supposed to investigate. \* \* \* In keeping the building free from trespassers and undesirable visitors there was always the risk, incident to the employment, of what actually occurred, and the award of compensation was justified by the evidence."

In the *Rosenfield case,* the principal question was whether the deceased employee, who was a salesman and as part of his duties occasionally made collections for his employer and carried considerable sums of money on his person, had been robbed and then murdered or whether he committed suicide, where his body was seen to fall from a viaduct and was dead when picked up. There was conflicting evidence in the record as to that point. In the course of the opinion we said: "These undisputed facts, together with the fact that his shoes had been removed from his feet, are facts that give rise to a reasonable inference that the motive for his assassination was robbery under

the belief that he was carrying his employer's money. That he frequently had sums of money of his employer on his person is not disputed. That fact created a hazard incident to his employment and to which the public was not exposed."

In our opinion, these cases are clearly distinguishable from the instant case. There is no evidence in the record that Domalik's duties were of such a nature as would likely cause him to have to deal with persons who, in the nature of things, were liable to attack him. He was not a janitor or watchman, nor did he have any duties to perform involving the collection or delivering of money. His sole duties were those of fireman and boiler tender. There is no evidence in the record which would provide any basis for a reasonable inference of a causal connection between the employment of the plaintiff in error and his injury received at the hands of an unknown person.

This court in a long line of cases has held that injuries to or death of an employee sustained as the result of an assault upon him having no connection with the employment are not compensable, even though the employee was at the time performing duties "in the course of his employment."

In *City of Chicago* v. *Industrial Com.* 292 Ill. 406, we held that the injury received there at the hands of a fellow workman did not arise out of the work, but as a result of a quarrel over a private matter which was not connected with the employment, and, therefore, there could be no award for compensation. In that case we said: "The felonious assault which was made upon the deceased was without any excuse. It had no more connection with the work in which he was engaged than if Ramsey had been a loiterer on the street and had asked for a drink from Gallagher's can. There was no causal relation between the work and the assault. The affair was purely personal, with no reference to the employment. Ramsey and Gal-

lagher happened to be at the same place because of their employment, but an injury done by one to the other on account of some purely personal grudge which this proximity gave an opportunity to inflict was not a result of the employment. There was no causal connection between the conditions under which the work was to be done and the injury. The injury was not incidental to the character of the business, but the deceased would have been equally exposed to it entirely apart from his employment."

The accidental shooting of an employee, who was a mechanic in a garage and was repairing a car; by a bystander with whom the employee had had no quarrel or any business transactions, was held not compensable in *Spiller* v. *Industrial Com.* 331 Ill. 401, as it did not arise out of the employment. Other cases announcing this same principle are: *Jones Foundry and Machine Co.* v. *Industrial Com.* 312 Ill. 27; *Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459; *Sure Pure Ice Co.* v. *Industrial Com.* 320 Ill. 332; *Borgeson* v. *Industrial Com.* 368 Ill. 188; *Jersey Ice Cream Co.* v. *Industrial Com.* 309 Ill. 187; *Mix Dairy Co.* v. *Industrial Com.* 308 Ill. 549.

In each of these cases compensation was denied, on review by this court, for the reason that the injuries sustained in each case did not have their origin in any risk peculiar to the employment and, therefore, there was no causal relation between the character of the employment and the injury.

Here, the affair was purely personal. Though Domalik came to the boiler room and punched in as Kalinowski was leaving and they happened to be at the same place because of their employment, the assault cannot be traced to the employment. as the contributing proximate cause. (*Borgeson* v. *Industrial Com.* 368 Ill. 188.) They had no argument over the work or the manner in which it was being done. Neither was the superior over the other in their employment. If Domalik's suspicions were true that Ka-

308

linowski was the one who pushed him down the stairs, it was on account of a purely personal grudge and had no reference to their employment. There was no causal connection between the conditions under which the work was being done and the injury. Furthermore, the assault did not occur for more than an hour and a quarter after Domalik commenced his work and Kalinowski had left for the day. It cannot be said that the injury to plaintiff in error flowed as a rational consequence from any risk peculiar or incidental to his employment, (*City of Chicago* v. *Industrial Com.* 292 Ill. 406,) and, therefore, it is not compensable. As we said in *Mt. Olive & Staunton Coal Co.* v. *Industrial Com.* 374 Ill., at page 464: "An award cannot be based upon guess or surmise but must be founded upon facts and inferences reasonably drawn from facts proved by the evidence."

We approve the finding of the circuit court that there is not sufficient evidence to support the finding and award of the Industrial Commission, and the judgment of the circuit court is, therefore, affirmed.

*Judgment affirmed.*