(No. 29534.—

IMMACULATE CONCEPTION CHURCH, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ELEANOR J. METZ, Defendant in Error.)

*Opinion filed January 22, 1947.*

PEREGRINE & BRUEGGER, of Chicago, for plaintiff in error.

JONES, KEY & CHAPMAN, (C. D. JONES, and ROBERT G. DREFFEIN, of counsel,) all of Chicago, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

By this writ of error plaintiff in error seeks reversal of an order of the superior court of Cook county confirm-

ing an award of the Industrial Commission to defendant in error, Eleanor J. Metz.

On September 2, 1941, William F. Metz, while working as a plumber on a building owned by plaintiff in error, fell from a scaffold some seven or more feet, receiving injuries from which he died the next day without regaining consciousness. His widow filed application for an award under the Workmen's Compensation Act, against plaintiff in error and Albert Drohan, its pastor. The sole issue involved is whether deceased was an employee or an independent contractor.

The church owned a frame building occupied as a "Sisters' Convent." Desiring to move the building to a new site, it engaged Crowe Brothers to so do. It was necessary to disconnect the plumbing, and after the building was placed on its new location, to install new water and sewer connections and connect the plumbing thereto. The work of installing new sewer and water connections involved breaking concrete at some points on Harlem avenue and tunneling under it at others.

Metz, a member of the parish of plaintiff in error, had been a plumbing contractor for years. His business billheads so indicated. For about twenty-five years he had been a member of the "Plumbing Contractors Association," though not a member at the time of his death.

Albert Drohan, called in the record "Father Albert," was a Catholic priest and pastor of plaintiff in error parish. On or about August 8, 1941, Father Albert sent for Metz and told him of the moving of the Sisters' home and that he wanted Metz to make the necessary connections. To which Metz replied "all right." The next day Father Albert and Metz discussed the location of the water mains on Talcott avenue in front of the new location of the building to be moved. Metz disconnected the water and sewer pipes before the building was moved. After the building had been moved to its new location, Father Albert, Metz

and one John Miniter, a sewer contractor, met at the new location of the building, and Miniter drew a rough sketch or diagram, identified but not in evidence, of the necessary plumbing connections, a copy of which was left with Father Albert. Metz, without conferring with Father Albert, engaged Miniter to connect the sewer outlets of the building to the sewer in the street. This Miniter did, using his own employees. At the time of the death of Metz no statement had been made out, or given to anyone by Miniter.

After the death of Metz, Miniter compiled two statements, of materials furnished and work done. One was made to Metz and the other to plaintiff in error. Miniter testified this was because he did not know who should receive the statement.

On August 20, 1941, Metz applied for and received a highway permit. In so doing he signed an acceptance of the provisions of such permit, in and by which he made himself personally liable for any damages resulting from the breaking of the concrete pavement and tunneling thereunder to install these sewer connections. He gave bond for faithful performance. On August 21, 1941, he, in his own name, obtained a meter permit from the city of Chicago. On August 22, 1941, Metz made a pencil memorandum of "four hours wiping stop cock etc." and ordered, in his own name, a quantity of pipe and fittings, amounting to $68.98.

On August 23, 1941, Father Albert left on his vacation and did not return until after the death of Metz. August 26, 1941, there was ordered and delivered on the job, $78.86 worth of material from the Jefferson Park Fuel and Material Company. John J. Quinn, auditor and secretary of that concern, testified that the material listed in plaintiff in error's exhibit 4, stating sold to Immaculate Conception Church, was ordered by telephone; that Father Albert called him on the telephone giving the first order. Father Albert testified he did not "directly at any time,

order any materials for the job from the Jefferson Park Fuel and Material Company." August 27, 1941, Metz ordered $26.09 worth of material from the Weil-McLain Co. August 25, 1941, Metz employed Brooks to break the concrete pavement with his air hammer. Brooks sent Metz a statement for $20. August 29, 1941, Brook's employees excavated a ditch, at the agreed price, with Metz, of $25. Statement for this work was not sent to Metz before he died but one was sent September 17, 1941. Pencil memoranda, in the handwriting of Metz, show a credit of $40, which Father Albert stated he paid.

Defendant in error, widow of Metz, testified her husband had done both contract work and work by the hour; that in each case he kept his records as to his time; that each evening, upon his arrival home, she would sit down with him and he would mark on a piece of paper his time for the day; that when materials were to be kept track of he would mark them on a separate slip; that upon completion of any job the entries on the slips of paper would be carried forward to a daybook; that on the Immaculate Conception job there were only slips of paper because the job was not completed. After Metz's death, Mrs. Metz took all the bills to Father Albert. She also testified that at the coroner's inquest she was sworn and testified that when asked by whom her husband was employed, she answered, "By himself. He was a master plumber." And when asked the question, "and his Social Security number, please, do you know what it is?", answered: "I don't think he had any. I don't think he had to have any whatever, as he was a boss himself." An award was entered. The superior court, on *certiorari*, affirmed the award but as Albert Drohan had died prior to the hearing in the superior court, the award was by stipulation set aside as to him.

Plaintiff in error contends that defendant in error failed to maintain the burden of proving that her deceased husband was an employee under section 5 of the act; that all

the facts are undisputed, except the testimony that Father Albert on August 26, 1941, ordered, by telephone, from Jefferson Park Fuel and Material Company the first of three deliveries of material for the job, and, as to that disputed fact, the undisputed testimony was that Father Albert left on his vacation on August 23, and that the arbitrator erred in refusing to admit Father Albert's testimony relative to a conversation he had with the deceased about ordering material from the Jefferson Park Fuel and Material Company, and that where, as here, the main and essential facts are not in dispute, the question for decision is one of law.

It is not possible to, in all cases, lay down a rule by which the status of men working and contracting together can be accurately defined, as to whether they are employees or independent contractors. Each case must depend upon its own facts. No one feature of the relation is determinative, but all must be considered together. (*Kehrer* v. *Industrial Com.* 365 Ill. 378; *Stellwagen* v. *Industrial Com.* 359 Ill. 557; *Franklin Coal and Coke Co.* v. *Industrial Com.* 296 Ill. 329; *Bristol & Gale Co.* v. *Industrial Com.* 292 Ill. 16.) It is also the rule that the fact that the employment is for one job, which requires no supervision, is not conclusive that one is an independent contractor. The most important single factor is the right of the employer to control the manner of doing the work, though not the exercise of that right. (*Kehrer* v. *Industrial Com.* 365 Ill. 378; *Van Watermeullen* v. *Industrial Com.* 343 Ill. 73; *Nelson Bros. & Co.* v. *Industrial Com.* 330 Ill. 27; *Decatur Railway and Light Co.* v. *Industrial Board,* 276 Ill. 472.) It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and an employee. As a general rule, an independent contractor is one who contracts to do a specified piece of work, furnishing his own assistance and executing the work either entirely in accord-

ance with his own ideas or in accordance with a plan previously given him by the person for whom the work is done, without his being subject to the orders of the latter in respect to the details of the work. (*Nelson Bros. & Co.* v. *Industrial Com.* 330 Ill. 27; *Meredosia Levee and Drainage Dist.* v. *Industrial Com.* 285 Ill. 68.) If the person for whom the work is being done retains the right to control the details and the manner and method by which the work is to be done, the relation of employer and employee exists. The fact that payment is to be made by the piece or job, or by the day or the hour, does not necessarily control where the workman is subject to the control of the employer as an employee and not as a contractor. *Nelson Bros. & Co.* v. *Industrial Com.* 330 Ill. 27; *Amalgamated Roofing Co.* v. *Travelers Ins. Co.* 300 Ill. 487; *Franklin Coal and Coke Co.* v. *Industrial Com.* 296 Ill. 329.

It is clear from this record that the contract between Father Albert and William F. Metz was simply the statement of Father Albert to Metz that he wanted him to disconnect the plumbing in the building, and, after it had been moved, to connect the plumbing to the water main and sewer. Metz agreed to do the work. This constituted the entire contract. Whether it was one of employment or that Metz was an independent contractor must be gathered from the acts and doings of the parties. All the permits for opening the pavement and connecting the sewer and water were obtained by Metz in his own name. Where a bond was required, Metz furnished it. All material, other than the disputed item of $76.88, was ordered by him, and where statements were rendered prior to the death of Metz, they were sent to and charged to Metz. The payment of $40 by Father Albert to Metz, as Metz's records show, was used in cash paid out and time charged in obtaining the necessary permits. This is not in itself sufficient to constitute a contract of employment. Metz entered into contracts with Brooks to dig the ditch and

open the street with his pneumatic hammer. He made the contract with Miniter, a sewer contractor, to connect the sewer outlets with the sewer. Miniter's testimony is that he did not make out a statement for his work prior to the death of Metz. Thereafter he made out two, one of which was to Metz and the other to the parish.

Defendant in error insists that all the evidence strongly tends to prove that Father Albert undertook the direction of the entire job and establishes the relationship of employer and employee. It is argued that the admitted fact is that Father Albert accompanied Metz to the location where the water connection could be made at the new location. It is also contended that he talked with Metz almost every day and apparently dictated to Metz what was to be done from time to time in the matter, and that Metz by his own records indicated, by the method he was keeping time, that he was an employee; and they point out the advancement of money for permits, and the fact that Father Albert had a duplicate of a rough diagram drawn by Miniter, which the sewer contractor apparently followed in his direction of the work. They argue that the fact that Father Albert did not, while he was gone, exercise direct supervision does not negative the fact that Metz performed his work in compliance with the instructions of Father Albert, and that Father Albert still had direct supervision of the operations and could have directed the same if he so wished. Defendant in error's counsel say that all the facts, when considered, point to but one conclusion, and that is that Father Albert assumed supervisory control over all the operations required in the matter. These contentions are not supported by any direct evidence but are largely the conjecture or speculation of defendant in error.

Defendant in error had the burden, under the statute, to establish, by a preponderance of the competent evidence, all the essential elements of a contract of employment of her deceased husband by plaintiff in error to entitle her to

recover compensation. *Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294; *Western Cartridge Co.* v. *Industrial Com.* 383 Ill. 231; *Northwestern Yeast Co.* v. *Industrial Com.* 378 Ill. 195; *Borgeson* v. *Industrial Com.* 368 Ill. 188.

This court has in numerous cases held that liability under the Workmen's Compensation Act cannot rest upon imagination, speculation or conjecture, or upon a choice between two views equally compatible with the evidence, but such liability must arise out of facts established by a preponderance of the evidence. *Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294; *Mirific Products Co.* v. *Industrial Com.* 356 Ill. 645; *American Smelting and Refining Co.* v. *Industrial Com.* 353 Ill. 324; *Nelson* v. *Industrial Com.* 346 Ill. 82.

Courts are not at liberty to and will not disregard the findings of the Industrial Commission unless they are against the manifest weight of the evidence. (*De Bartolo* v. *Industrial Com.* 375 Ill. 103; *Rodriguez* v. *Industrial Com.* 371 Ill. 590.) But in a case, as in the one under consideration, where the facts are not essentially in dispute and the finding of the Industrial Commission appears to be the result of conjecture and speculation, it cannot be said that the finding is supported by the manifest weight of the evidence.

Our conclusion, from an examination of the record, is that defendant in error failed to prove that the contract between plaintiff in error and her deceased husband was one of employment.

The judgment of the superior court is reversed and the award set aside.

*Judgment reversed; award set aside.*