Nan Young Lyons, Appellant, v. Michigan Boulevard Building Company, Inc., Appellee.

**Gen. No. 43,746.**

484

Opinion filed
May 20, 1947. Released for publication June 9, 1947.

JOSEPH D. RYAN and LOUIS P. MILLER, both of Chicago, for appellant.

ROSS, BERCHEM & SCHWANTES, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Nan Young Lyons sued Michigan Boulevard Building Company, Inc., to recover damages for injuries sustained while she was a passenger in an elevator in the Michigan Boulevard building, Chicago.

At the close of plaintiff's evidence the court sustained a motion of defendant for a directed verdict and plaintiff appeals from a judgment entered upon the directed verdict of not guilty.

The motion of defendant was in the nature of a demurrer to the evidence, and the rule is " '. . . that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence,—we can look only at that which is favorable to appellant. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489.' (*Hunter v. Troup,* 315 Ill. 293, 296, 297.) " (*Rose v. City of Chicago,* 317 Ill. App. 1, 12. See, also, *Mahan v. Richardson,* 284 Ill. App. 493, 495; *Thomason v. Chicago Motor Coach Co.,* 292 Ill. App. 104, 110; *Wolever v. Curtiss Candy Co.,* 293 Ill. App. 586, 597; *Olympia Fields Club v. Bankers Indem. Ins. Co.,* 325 Ill. App. 649, 656, 657.)

Observing the foregoing established rules we find the following facts: Plaintiff, at the time of the accident, was employed "in the office" of the Michigan Boulevard X-Ray Laboratory as a bookkeeper, typist and receptionist. The office and laboratory were located on the fourteenth floor of the Michigan Boulevard building. She was not required to be at work until nine o'clock A. M. On the day of the accident, in accordance with her custom, she entered the building from the Washington street side. The building has twenty-one floors and seven elevators. Plaintiff got on the most westerly elevator on the ground floor. It was then about twenty minutes to nine. She testified

that she intended, before she "started working," to get off the elevator on the fourteenth floor in order to go to the rest room, which was on that floor, then leave her hat and coat at the office where she was employed, and then go to the ground floor to eat and have a cup of coffee at a public restaurant located on that floor. The elevator made a stop on the eleventh floor and after it started up again the light fixture in the elevator fell and struck plaintiff on the top of her head, severely injuring her. The fixture was a rectangular piece of glass in the center of the ceiling of the elevator and a corner of the glass had been broken off at least two months before the accident, so that the part of the glass that remained was entirely away from one of the prongs which was designed to hold it in place.

In directing a verdict the trial court adopted the theory of defendant that at the time of the accident plaintiff was acting in the course of her employment and that the accident arose out of her employment. Plaintiff contends that the trial court misinterpreted the evidence and the law bearing upon it. She contends that the accident occurred twenty minutes before her work began; that when she entered the elevator she was not engaged in any duty connected with her employment nor was she then subject to the supervision of her employer; that at the time of the accident she was not going directly to her work but was on her way to perform acts having no relation to the duties of her employment and at places chosen solely for her own convenience; that she was not engaged in any act that would advance the employer's work nor would the employer benefit in any way by her having breakfast in the building; that the danger of injury in the elevator was not peculiar to her work but was common to anyone who used the elevator; that until nine o'clock, when her work commenced, she was the mistress of her own time and action and had the right to

leave the building and eat her breakfast in some restaurant not located in said building; that her presence on the elevator was for her own private purpose and convenience; that under the facts and the law plaintiff was not in the course of her employment at the time of the accident, and the accident did not arise out of her employment.

To support the ruling of the trial court defendant advances the following theory: ''This building [30 North Michigan avenue] constitutes the premises of plaintiff's employer. The fact that other tenants also occupy portions of this building is no denial of the fact that the building still constitutes the employer's premises for purposes of the Workmen's Compensation Act''; that ''it is common knowledge that a portion of the rent paid by a tenant for the occupancy of the premises does in fact cover a portion of the cost of furnishing this necessary and essential elevator service. The tenant-employer does in fact furnish this service for the benefit of those people with whom he does business and his employees,'' and that ''this plaintiff's employer did provide this elevator service for the use and benefit of his employees''; that while the general public has the right to use the elevators they ''are kept in operation, not for the general public as such, but for the use of the tenants, their employees, their customers, their patients and all other legitimate visitors of tenants and occupants of the building''; that ''when this accident occurred plaintiff had entered her employer's premises. She was following the customary route to her place of employment—that route provided by her employer.'' According to defendant's theory the public restaurant where plaintiff intended to get her breakfast was also the premises of plaintiff's employer.

Plaintiff's complaint alleged that defendant operated the building and that it provided passenger elevators which the tenants and their employees and

the public generally were invited to use in passing from floor to floor; that it was the duty of defendant in the operation and maintenance of the elevators to use the highest degree of care for the safety of passengers which was practically consistent with the efficient use and operation of the elevators. In its original answer defendant did not deny that it provided the elevator service and invited the tenants and their employees and the public generally to use the same. It denied "that it was the duty of the defendant to use the highest degree of care practically consistent with the efficient use and operation of said elevators," and further denied that it carelessly and negligently maintained the elevator in question and that it carelessly and negligently operated the same, and it alleged that if plaintiff sustained injuries they were not due to any fault, carelessness, negligence, improper conduct or omission on the part of defendant, but were due to the fault, carelessness, negligence, improper conduct and omission of plaintiff at the time and place in question. The original answer did not question the right of plaintiff to sue defendant for alleged common law negligence, and the special defense, later interposed, was not even referred to in that answer. In view of the record before us we must assume that the elevator service was furnished by the building owner as a part of the business of operating the building and that in operating the elevators the building owner was not acting as the agent of any tenant. We may add that the mere fact that the building owner used part of the rents paid by the tenants in the maintenance and operation of the entire building, including the elevator service, would not create an agency, nor would it establish, as a matter of law, that the elevators and the building were a part of the tenants' premises. That defendant could not transfer to plaintiff's employer the responsibility of the operation of the elevators so as to release defendant from its liability for

negligence to plaintiff, see *Kopta v. Greer Shop Training, Inc.,* 327 Ill. App. 470, 475. To illustrate the far-reaching effect of defendant's theory if it were followed: An office worker whose place of employment was on the upper floor of the Empire State building in New York City, or the upper floor of the Merchandise Mart in Chicago, would be, for the purposes of the Workmen's Compensation Act, in his employer's premises the moment he entered the building, and when he entered one of the many elevators in the building the elevator service would be, in contemplation of the Act, furnished by the tenant-employer for the benefit of the employee. That such a theory, if followed, would prove a boon to the owners of large buildings but a burden to the tenant-employers who were under the Act, is obvious. The Illinois Supreme court has many times passed upon cases involving the Workmen's Compensation Act, but in none, to our knowledge, has it sustained a theory such as defendant advances. The record does not disclose that there was any special arrangement between defendant and plaintiff's employer in reference to the elevator service in the building.

As persons operating passenger elevators in buildings must use extraordinary care in and about their operation to prevent injury to persons being carried therein (*Hartford Deposit Co. v. Sollitt,* 172 Ill. 222, 225), it is plain that if plaintiff was able to sustain her theory of fact as to the manner of the accident defendant would be confronted with the defense of a very serious case unless the special defense it finally advanced, that plaintiff's common law right to sue defendant was barred by the Workmen's Compensation Act, is sound. Plaintiff strenuously insists that in the consideration of the special defense the following circumstances should be kept in mind: The accident happened on March 28, 1941, and plaintiff commenced her suit on March 9, 1942. In defendant's

original answer, filed on April 6, 1942, by a law firm skilled and experienced in the defense of personal injury cases, no reference was made to the Workmen's Compensation Act although the complaint advised defendant that plaintiff was an employee of one of the tenants of the building. On March 9, 1943, defendant's present attorneys were substituted for its original attorneys, and on June 5, 1943, a discovery deposition of plaintiff was taken by defendant. On August 20, 1943, they filed an amended answer to plaintiff's complaint in which the special defense that defendant and plaintiff and her employer were, at the time of the accident, operating under and subject to the provisions of the Workmen's Compensation Act was first asserted. In alleging this special defense defendant states that plaintiff ought not to have this action against defendant because at the time of the accident plaintiff and her employer, and defendant, "his agents and servants," were subject to and operating under and in pursuance of the Workmen's Compensation Act of the State of Illinois; that plaintiff at the time in question was working and acting within the scope of her employment with her employer, and defendant, "its agents and servants," at said time were working and acting within the scope of their employment; that by virtue of Section 29 of the Act [Ill. Rev. Stat. 1945, ch. 48, par. 166; Jones Ill. Stats. Ann. 143.44] plaintiff is barred from bringing this action against defendant and plaintiff's employer became subrogated to the cause of action, if any, arising from the supposed grievances mentioned in the complaint, and that if any cause of action exists against defendant for said grievances the right to bring such action is in plaintiff's employer, and not in plaintiff.

Plaintiff filed a replication to the amended answer in which she "admits that at the time mentioned in plaintiff's complaint the defendant was subject to and was operating under the provisions of the Workmen's

Compensation Act of the State of Illinois; she denies that her employer, the Michigan Boulevard X-ray Laboratory, was subject to or was operating under the provisions of said Act. She denies that at the time mentioned in the complaint she was working or acting within the scope of her employment; she denies that she is barred from bringing this action by virtue of Section 29 of said Act, or that her employer became subrogated to her right of action herein." Defendant's special defense was first interposed more than two years after the accident, and at a time when any claim that plaintiff might have against her employer for compensation under the Act was barred. (See Sec. 24 of the Compensation Act, ch. 48, par. 161, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 143.39].)

The general rules of law governing a case like the instant one are well established. The problem is to correctly apply the rules to the particular facts of a case. ██ " 'The words "arising out of" and the words "in the course of" are used conjunctively. . . . The words "arising out of" refer to the origin or cause of the accident and are descriptive of its character, while the words "in the course of" refer to the time, place and circumstances under which the accident takes place.' (*Mueller Construction Co. v. Industrial Board,* 283 Ill. 148. See, also, *Arquin v. Industrial Com.,* 349 Ill. 220, and *Ervin v. Industrial Com., ante,* p. 56.) Both elements must be present at the time of the accidental injury in order to justify compensation. It is not alone sufficient that the injury was received by the employee in the course of his employment but it must arise while he was acting within the duties of his employment or in some act incidental thereto. *Vincennes Bridge Co. v. Industrial Com.,* 351 Ill. 444; *Pittsburgh Coal Co. v. Industrial Com.,* 323 id. 54.

". . . *Even though the accident happens on the employer's premises, yet if it occurs while the employee is doing something there for his own personal benefit it does not arise out of his employment.* Industrial Com. v. Enyeart, 256 Pac. (Col.) 314; *Board of Education v. Industrial Com.,* 321 Ill. 23; Angerstein on Workmen's Compensation (1930 ed.) sec. 117, p. 255." (*Mazursky v. Industrial Com.,* 364 Ill. 445, 448, 449. Italics ours. See, also, *Country Club v. Industrial Com.,* 387 Ill. 484, 487, 488.)

In *Boorde v. Industrial Com.,* 310 Ill. 62, the deceased was employed by the Hoopeston Telephone Company as a telephone operator. Her regular hours of employment were from eight o'clock in the morning until one in the afternoon and from six to nine in the evening. She was entitled to a rest period of thirty minutes, which the telephone company allowed to all its operators because it was supposed to add to their efficiency. During that period the operators were permitted to go freely wherever they chose. Her regular rest period was from 10:30 to 11, but on the day of the accident she had exchanged time with another girl and her rest period was from 3:30 to 4. She met her death in an accident during the rest period. The court states in its opinion (pp. 64, 65):

"Caroline Benham's only duties were answering calls and making connections for users of the telephone. During the half hour of her rest period she had no duties to perform. She was at liberty to go where she pleased and occupy herself as she pleased. She could leave the premises of her employers, and, so far as her obligation to them was concerned, might engage in any occupation or form of activity she chose. Her only duty to them was to take up her work again at four o'clock. In the meantime she was the mistress of her own time and action. Whether the accident occurred in the course of her employment is

not material unless it also arose out of her employment, had its origin in her employment and was the result of some risk attendant upon her employment which it can now be seen might have been reasonably contemplated as incidental to it. (*Weis Paper Mill Co. v. Industrial Com.*, 293 Ill. 284.) The Workmen's Compensation act does not apply to every accidental injury which may happen to an employee during his employment. It does not make the employer an insurer against all injuries. The injury contemplated by that act must have had its origin in some risk of the employment. (*Edelweiss Gardens v. Industrial Com.*, 290 Ill. 459.) '*The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment or incidental to it.*' (*Fairbank Co. v. Industrial Com.*, 285 Ill. 11.) A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. (*Weis Paper Mill Co. v. Industrial Com., supra.*)'' (Italics ours.)

The holding of the Industrial Commission that the accident did not arise out of any risk connected with her employment was affirmed.

''. . . As stated above, no hard and fast rule can be laid down in these cases. *In some cases we have held that even though the accident happened on the employer's premises, yet if it occurs while the employee is doing something there for his own personal benefit, it does not arise out of and in the course of his employment.* (*Board of Education v. Industrial Com.*, 321 Ill. 23; *Mazursky v. Industrial Com., supra* [364 Ill. 445], and cases cited.) On the other hand, we have frequently allowed recovery under the act for injuries received at some distance from the employer's plant, where it was shown that at the time and place of the injury, the employee was doing some work connected with or incidental to his employment. *Porter Co. v.*

*Industrial Com.*, 301 Ill. 76; *Irwin-Neisler & Co. v. Industrial Com.*, 346 id. 89; *Porter v. Industrial Com.*, 352 id. 392.'' (*Scholl v. Industrial Com.*, 366 Ill. 588, 594. Italics ours.)

''. . . the accident must result from a risk incidental to the employment and while the employee is doing that which he is reasonably required to do *within the time of his employment* and at the place where he may be reasonably expected to be while discharging the duties of his employment. *Dietzen Co. v. Industrial Board*, 279 Ill. 11; *Morris & Co. v. Industrial Com.*, 295 id. 49. . . . The law is settled that an employee is not in the course of his employment, even though he may be in the general area of it, if he is not engaged in the particular duties for which he was employed or in any work incidental to his employment. (*West Side Coal Co. v. Industrial Com.*, 291 Ill. 301; *Danville, Urbana and Champaign Railway Co. v. Industrial Com.*, 307 id. 142.) If the deceased had been at his home repairing his car at the time of the accident no one would certainly contend that he was engaged in his employment . . . . The fact that he was near or on the school property at the time of the accident while he was engaged in repairing his car did not bring him within the course of his employment.'' (*Board of Education v. Industrial Com.*, 321 Ill. 23, 26, 27. Italics ours.)

In *Payne & Dolan v. Industrial Com.*, 382 Ill. 177, 181, the court stated: ''The rule in this State is that generally, injuries suffered while the employee is going to or returning from the employer's premises, do not arise out of or in the course of the employment of the injured employee so as to entitle him to compensation. (*Northwestern Yeast Co. v. Industrial Com.*, 378 Ill. 195; *Mt. Olive and Staunton Coal Co. v. Industrial Com.*, 374 id. 461; *Puttkammer v. Industrial Com.*, 371 id. 497; *Schafer v. Industrial Com.*, 343 id. 573; *Schweiss v. Industrial Com.*, 292 id. 90.) However, the

exact line of demarcation between liability and nonliability for such accidental injuries is not easy to determine. Whether an accident is so related or incident to the employment as to cause it to be seen that it arose out of or in the course of the employment, depends upon the particular circumstances of each case."

In *Mazursky v. Industrial Com., supra,* the workman was engaged in repairing a tire on his personal automobile which he used as a means of transportation to and from his place of employment. The employer was engaged in the laundry business and the workman, with his employer's knowledge, used his own automobile two or three times a week to make late laundry deliveries on his way home. Other drivers followed the same practice. This act was to save the necessity of returning to the company garage the truck that was furnished him by his employer for delivery purposes. On the day of the accident when Mazursky returned to the laundry with his truck, which he had been using in delivering and receiving laundry, he noticed that there was a flat tire on his personal car. He took off the tire, brought it into the laundry garage, took the tube from the casing and made the repairs. He attempted to remove the casing from the rim but found it difficult to dislodge and a tire tool in the hands of another employee, who had offered to assist Mazursky, slipped out from the casing while both were trying to pry the casing loose, and struck Mazursky in his left eye, and he thereby lost the sight of that eye. The court held that it was not the duty of the employer to furnish the employee transportation to and from his work, nor had it assumed that function; that the use of his automobile by the workman was neither a duty of nor an incident to his employment; that at the time of the accident, even though it occurred on the employer's premises, *Mazursky was performing an act of a personal nature,* and the injury sustained by him did not arise out of his employment.

In *Wicks v. Cuneo-Henneberry Co.*, 319 Ill. 344, *cited
by the instant defendant*, the plaintiff, while on her
way to work in the plant of the defendant where she
was employed, tripped against the corner of one of
the "two iron doors which were warped and out of
repair" and which were maintained by the defendant
in the public sidewalk in South Grove avenue, and was
injured. The iron doors were about twenty-five feet
from the employees' entrance to the defendant's build-
ing. The defendant filed a special plea that the plain-
tiff was employed in its establishment and the injury
arose in the course of and out of her employment, and,
therefore, her right to maintain the common law action
against the defendant was barred by the Workmen's
Compensation Act. The court held that "the fact that
she was on her way to work is unimportant. She was
not on the premises where she was employed," and
therefore the accident did not arise out of or in the
course of her employment, and the Compensation Act
had no application to the case. It will be noted that
in the *Wicks* case the plaintiff was suing her employer
in a common law action and that the employer raised
the special defense that the injury to plaintiff arose
in the course of and out of her employment and that
therefore the common law action was barred by the
provisions of the Workmen's Compensation Act. The
Supreme court held against the special plea and af-
firmed the common law judgment in favor of the
plaintiff.

In the instant case defendant's argument in support
of its contention that at the time of the accident plain-
tiff was in the course of her employment and that the
accident arose out of her employment is that "plain-
tiff was in the course of her employment at the time
of the accident. She was on her employer's premises.
She was going to her place of employment. It was
within a reasonable time of her starting hour and she

was following the customary route provided by her employer. Plaintiff at the time of this accident was within the orbit, area, scope or sphere of her employment.'' But we are bound to assume that the accident occurred about twenty minutes before plaintiff was obliged to commence her work, and that she was not going directly to her work but was on her way to powder up in the washroom preparatory to having breakfast in a public restaurant on the ground floor of the building in question, and such acts, in our judgment, were not to be performed for her employer in the course of her employment or incidental to it; that they were acts solely for her own private benefit and purpose. She was employed ''in the office'' of her employer as a bookkeeper, typist and receptionist and, therefore, her work was performed in her employer's premises. As Mr. Justice DUNN stated in the *Boorde* case, *supra,* the deceased in that case was at liberty to go where she pleased and occupy herself where she pleased until four o'clock; that her duty to her employer was to commence work at that hour and ''in the meantime she was the mistress of her own time and action.'' In the instant case plaintiff's presence on the elevator *before her working hours began was solely for her own private purpose and benefit. So far as the record shows, her employer then had no control or authority over her movements and she had the same right to use the elevator as any of the general public.*

Defendant's principal case in support of its contention is *Wilson Garment Mfg. Co., Inc. v. Edmonds,* 312 Ill. App. 317, decided by this Division of the court. That case is not comparable to the instant one upon the facts. There the employee, Sirota, made a settlement with the owners of the building for $350 and released them from all liability for his injuries. After he received the $350 he filed a claim for compensation under the Act against his employer, Wilson Garment Mfg. Co., Inc., and the employer and Sirota then

agreed to settle that claim for $350. The settlement was approved by the Industrial Commission and the insurance carrier of the employer paid the amount to Sirota. Wilson Garment Mfg. Co., Inc., then brought suit against the defendants, Thomas S. Edmonds and Henry Russell Pratt, Jr., Trustees of the building, under Section 29 of the Workmen's Compensation Act to recover the amount it paid Sirota pursuant to the settlement agreement. The main defense to the action was that the payment of $350 made by the defendants to Sirota was a bar to the plaintiff's action; that "Section 29 of the Workmen's Compensation Act should not be construed so as to impose a double liability for the same injury." However, the defendant in that case did contend that personal injuries sustained by Sirota did not arise out of and in the course of his employment with the plaintiff, and that the approval of the settlement between the employer and Sirota by the Commission was not a finding by the Commission that any compensation was due Sirota under the terms of the Act but it was merely an approval of a compromise of a disputed claim, and that therefore the first paragraph of Section 29 of the Act was not applicable to the circumstances of the case. We stated in our opinion (p. 326):

"We think the circumstances of the case at bar present the elements necessary to bring the employee within the general rule. Sirota, on the day in question, left plaintiff's shop immediately following the end of his day's work and followed the customary route for leaving the premises. The fact that his employer was not the sole tenant of the building and that other tenants and the public generally had a right to use the elevator is not of controlling importance. The essential fact is that Sirota had the right to use the elevator and that it was the only reasonable means provided for coming to and going from his work. We are therefore of opinion that . . . the facts clearly indicate

that the injuries to Sirota arose out of and in the course of his employment and that he was entitled to claim compensation therefor.''

In so holding we followed the liberal rule adopted in New York, Massachusetts and California that where an employee at the end of his day's work *immediately* used the customary route for leaving the premises by a way provided by the employer *or reasonably used by the employee* compensation will be awarded. In the *Wilson Garment Mfg. Co., Inc.,* case it was not claimed that the building was the premises of the employer, nor that the elevator was, within the contemplation of the Act, the elevator of the employer. Defendant has cited a number of other cases, but none, in our judgment, sustains its position. *Schafer v. Industrial Com.,* 343 Ill. 573; *Wabash Ry. Co. v. Industrial Com.,* 294 Ill. 119, and *Indian Hill Club v. Industrial Com.,* 309 Ill. 271, are referred to in our opinion in the *Wilson Garment Mfg. Co., Inc.,* case. We have heretofore in this opinion referred to *Wicks v. Cuneo-Henneberry Co.* and *Mazursky v. Industrial Com.,* both of which, in our judgment, are adverse to defendant's contention. *Country Club v. Industrial Com., supra; Mix Dairy Co. v. Industrial Com.,* 308 Ill. 549, and *Sure Pure Ice Co. v. Industrial Com.,* 320 Ill. 332, are radically different from the instant case upon the facts. As "the Workmen's Compensation act is designed to protect workmen and compensate them for injuries received while performing any duty necessary to be performed in the course of their employment or incident to it'' (*Fairbank Co. v. Industrial Com.,* 285 Ill. 11, 13), it is liberally interpreted to bring an employee's claim against his employer for compensation under the Act within the Act (*Scholl v. Industrial Com., supra*), but in the instant case plaintiff is not suing her employer for compensation under the Act: she is suing the owner of the building in a common law action for damages alleged to have resulted

from its negligence. Defendant seeks to avoid its common law liability by interposing, as a special defense, that the injury to plaintiff arose in the course of her employment and that, therefore, her common law action is barred by the provisions of the Workmen's Compensation Act. To sustain that defense defendant is forced to strain the law, and to draw unreasonable and unwarranted inferences from the facts. To affirm the action of the trial court in directing a verdict at the close of plaintiff's evidence we must find that there is no evidence fairly tending to prove her claim that at the time of the accident she was not acting in the course of her employment and that the accident did not arise out of her employment. In our judgment, we would not be justified in so finding. If plaintiff had sued her employer for compensation under the Act she could not, in our opinion, prevail under the facts and the law. In this connection we note the late case of *Chicago Hardware Fdy. v. Industrial Com.*, 393 Ill. 294, where the court states (pp. 301, 302):

"There must be a causal connection between the conditions existing on the employer's premises and the injury to the employee, and the accident must have had its origin in some risk connected with or incidental to the employment. (*Cummings v. Industrial Com.*, 389 Ill. 356; *Illinois Country Club, Inc. v. Industrial Com.*, 387 Ill. 484; *Borgeson v. Industrial Com.*, 368 Ill. 188.) We said in the *Country Club case:* 'An injury may be said to arise out of the employment when, upon consideration of all the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the resulting injury. The mere fact that an employee was present at the place of injury because of his employment will not suffice unless the injury itself is a result of some risk of the employment. . . . Conversely, if an injury is caused by

reason of some factor unrelated to the nature of the employment, it cannot be said to arise out of the employment, and an injury which cannot fairly be traced to the employment as a contributing, proximate cause *and which comes from a hazard to which the employee would have been equally exposed apart from the employment, does not arise out of the employment, as the causative danger must be peculiar to the work and not common to the neighborhood and the public.'* *Spiller v. Industrial Com.,* 331 Ill. 401; *Gooch v. Industrial Com.,* 322 Ill. 586.

"The burden devolves upon an applicant for compensation under the act to establish by a preponderance of competent evidence all of the essential elements of his right to compensation. *Western Cartridge Co. v. Industrial Com.,* 383 Ill. 231; *Northwestern Yeast Co. v. Industrial Com.,* 378 Ill. 195; *Borgeson v. Industrial Com.,* 368 Ill. 188.

"It has been often said by this court that liability under the Workmen's Compensation Act cannot rest upon imagination, speculation or conjecture, or upon a choice between the two views equally compatible with the evidence, but such liability must arise out of facts established by a preponderance of the evidence. *Nelson v. Industrial Com.,* 346 Ill. 82; *American Smelting and Refining Co. v. Industrial Com.,* 353 Ill. 324; *Mirific Products Co. v. Industrial Com.,* 356 Ill. 645." (Italics ours.)

If plaintiff were using the elevator at eight o'clock A. M. in order to see one of the many physicians located in the building, could it be reasonably contended that an accident that happened at that hour occurred while she was in the course of her employment and that it arose out of it? In *Grady v. Nevins Church Press Co.,* 199 Atl. (N. J.) 578, the claimant was about to enter her employer's premises a half hour before her working hours began. She had alighted from a bus and was walking upon a highway normally used for vehicular

traffic entering and leaving the plant when she slipped and fell on snow and ice, or upon a piece of paper, and sustained injuries. Immediately adjacent to the driveway was an entrance intended for use by employees in entering the employer's plant. In holding that the claimant was not in the course of her employment at the time the court stated (p. 579): "The fact that the accident in question occurred at least a half hour before the time appointed for commencing work at the plant is, we think, quite conclusive that the employment had not yet begun within the contemplation of the statute." In *Boorde v. Industrial Com., supra,* the accident must have happened less than a half hour before the deceased in that case was required to resume her work, but the Supreme court held that the deceased in that case was the mistress of her own time and action until the time arrived when she was to take up her work again. We are aware that where an employee, a reasonable length of time before his working hours begin, is engaged in the duties of his employment, he is in the course of it. *Mueller Const. Co. v. Industrial Board,* 283 Ill. 148, is a case in point. There the claimant was a carpenter foreman engaged in remodeling a church. It was his custom to get to work in the morning a half hour in advance of the workmen in order to order materials, look over the building, and in a general way make preparation for the day's work. In that case it was very properly held that he was injured in the course of the duties of his employment.

Defendant asks us to take into consideration certain answers given by plaintiff at the time the deposition for discovery was taken by defendant. It contends that the answers tend to show that plaintiff was going right to work at the time of the accident. As this case may be tried again we refrain from expressing any opinion as to the effect of the said answers. It is sufficient to say that even if the answers tended to contradict the testimony given by plaintiff

upon the trial, such contradiction could not be considered by us in passing upon the ruling of the trial court in directing a verdict.

Plaintiff earnestly contends that even if it were possible to draw two reasonable inferences from the evidence, one that the accident arose out of and in the course of the employment of plaintiff and another that the accident did not arise out of and in the course of her employment, that the record would then present a question of fact for the jury to determine, but in our view of this appeal it is not necessary for us to pass upon this contention.

It is our judgment that the trial court committed serious error in directing a verdict for defendant at the close of plaintiff's evidence and, therefore, the judgment of the Superior court of Cook county is reversed and the cause is remanded for a new trial.

*Judgment reversed, and cause remanded for a new trial.*

SULLIVAN, P. J., and FRIEND, J., concur.